**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 15**

Docket Nos. SF-0752-15-0014-I-1
SF-0752-15-0155-I-1

**Harinder Singh,**

**Appellant,**

**v.**

**United States Postal Service,**

**Agency.**

May 31, 2022

Myrna Castanon, Esquire, Los Angeles, California, for the appellant.

Catherine V. Meek, Long Beach, California, for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which affirmed his demotion. For the reasons discussed below, we DENY the appellant's petition for review and AFFIRM the initial decision AS MODIFIED by this Opinion and Order.

BACKGROUND

¶2    The appellant was employed by the agency as the Manager Transportation/Networks, EAS-23, at the Los Angeles Processing and Distribution Center (P&DC). *Singh v. U.S. Postal Service*, MSPB Docket

No. SF-0752-15-0014-I-1, Initial Appeal File (0014 IAF), Tab 76 at 4. In March 2013, one of the appellant's subordinate employees reported to agency authorities that the appellant physically threatened him during a meeting. *Id.* The agency's Office of Inspector General (OIG) investigated those allegations. OIG later expanded its investigation to include other alleged misconduct by the appellant. *Id.* at 4-5. The appellant was temporarily assigned to another position and then put on administrative leave while he was under investigation. *Id.*

¶3   After OIG completed its investigations into the appellant's conduct, the agency interviewed the appellant and other employees. *Id.* at 5-6. On April 29, 2014, the agency issued the appellant a Notice of Proposed Removal. 0014 IAF, Tab 4 at 138-50. The agency charged the appellant with misuse of position, acceptance of gifts from subordinates, and improper conduct. *Id.* at 138-40. The appellant provided both oral and written responses to the proposed removal; he also submitted a number of documents to the deciding official. *Id.* at 17-136.

¶4   On September 9, 2014, the agency issued a Letter of Decision removing the appellant. *Id.* at 12-16. The deciding official sustained the charges of misuse of position and acceptance of gifts from subordinates in full and he sustained three of the five specifications of improper conduct. *Id.* at 12-13. The deciding official determined that the penalty of removal was appropriate for the sustained misconduct. *Id.* at 13-15.

¶5   On October 3, 2014, the appellant timely filed a Board appeal challenging his removal. 0014 IAF, Tab 1. On November 26, 2014, the agency issued a new Letter of Decision rescinding the September 9, 2014 removal decision and replacing it with a decision to demote the appellant, effective November 29, 2014, to the position of Network Operations Specialist, EAS-19. 0014 IAF, Tab 7 at 7-12. The deciding official wrote in part:

> Although I believe your conduct warrants your removal from the Postal Service, I believe it is in everyone's best interest to attempt rehabilitation through a lower level assignment with direct

> supervision and no subordinates. Such a position was unavailable at the time of my original decision, but is available now.

*Id.* at 10. The agency informed the appellant that he was entitled to back pay for the period during which his removal was in effect. *Id.* at 7.

¶6 The appellant timely filed an appeal of his demotion with the Board on December 2, 2014. *Singh v. U.S. Postal Service*, MSPB Docket No. SF-0752-0155-I-1, Initial Appeal File (0155 IAF), Tab 1. The administrative judge joined the removal and demotion appeals for adjudication. 0014 IAF, Tab 14; 0155 IAF, Tab 8. The agency later moved to dismiss the removal appeal as moot, 0014 IAF, Tab 27, but the appellant argued that the removal appeal was not moot because he had not been returned to the status quo ante and because he had not received a performance-based increase to his salary for 2013 and 2014, 0014 IAF, Tab 28. After a hearing on the joined appeals, the agency supplemented its motion to dismiss with additional evidence regarding the salary increase issue. 0014 IAF, Tab 82. The appellant responded, arguing that the removal appeal was still not moot. 0014 IAF, Tab 83.

¶7 The administrative judge issued an initial decision affirming the appellant's demotion. 0014 IAF, Tab 86, Initial Decision (ID). She found that the agency proved the charge of misuse of position and the three specifications of improper conduct that were sustained by the deciding official, but that the agency failed to prove the charge of acceptance of gifts from subordinates. ID at 4-20. As to penalty, the administrative judge limited her review to the demotion to avoid the possibility of affirming a penalty more severe than the one the agency ultimately chose to impose. ID at 22. Even though she did not sustain all of the charges, the administrative judge found that the penalty of demotion was within the tolerable limits of reasonableness. ID at 22-24.[1]

---

[1] The administrative judge also found that the agency fully rescinded the removal and provided the appellant with all of the relief he could have received in his removal

¶8 The appellant has filed a timely petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. He argues that the administrative judge erred in crediting the testimony of one of the agency's key witnesses. *Id.* at 23-24. Additionally, he argues that the administrative judge improperly denied his motion to compel discovery related to the consistency of the penalty with those imposed on employees for the same or similar offenses. *Id.* at 12-13. He also challenges the administrative judge's analysis of the *Douglas* factors.[2] *Id.* at 13‑16. Finally, the appellant argues that he was denied due process and that the deciding official was improperly influenced. *Id.* at 16-22. The agency has responded in opposition to the petition for review, PFR File, Tab 3, and the appellant has filed a reply, PFR File, Tab 4.

## ANALYSIS

### The appellant's disparate penalty claim does not provide a basis for reversing the initial decision.

¶9 The appellant argues that he was denied discovery regarding the agency's treatment of other employees who engaged in similar misconduct. PFR File, Tab 1 at 12-13. He speculates that such discovery would have revealed that the agency treated similarly situated employees more leniently. *Id.* at 13. Before we address the appellant's arguments relating to discovery, we take this opportunity to reinstate our former law governing the analysis of disparate penalty claims and thereby overrule *Figueroa v. Department of Homeland Security*, 119 M.S.P.R. 422 (2013); *Villada v. U.S. Postal Service*, 115 M.S.P.R. 268 (2010); *Woebcke v.*

---

appeal. ID at 24-25. She did not find that the removal appeal was moot, however. ID at 24. On review, the appellant does not challenge the administrative judge's disposition of the removal appeal, and therefore we will address only the demotion appeal.

[2] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-306 (1981), the Board articulated a nonexhaustive list of factors to be considered when evaluating the penalty to be imposed for an act of misconduct.

*Department of Homeland Security*, 114 M.S.P.R. 100 (2010), *abrogated in part on other grounds as recognized in Bowman v. Small Business Administration*, 122 M.S.P.R. 217 (2015); *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657 (2010), and their progeny, except to the extent that the law may have been modified by the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit's) decision in *Williams v. Social Security Administration*, 586 F.3d 1365 (Fed. Cir. 2009), discussed *infra*.

¶10    It is well settled that among the factors an agency should consider in setting the penalty for misconduct is "consistency of the penalty with those imposed upon other employees for the same or similar offenses." *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981). For decades after *Douglas* was decided, for a disparate penalty claim to succeed, the Board required close similarity in offenses between the appellant and any comparator(s), and that the appellant and the comparator(s) worked in the same unit and for the same supervisors. *E.g.*, *Jackson v. Department of the Army*, 99 M.S.P.R. 604, ¶ 7 (2005); *Fearon v. Department of Labor*, 99 M.S.P.R. 428, ¶ 11 (2005); *Rasmussen v. Department of Agriculture*, 44 M.S.P.R. 185, 191-92 (1990); *Archuleta v. Department of the Air Force*, 16 M.S.P.R. 404, 407 (1983).

¶11    In a series of cases issued in 2010, however, the Board changed its approach to disparate penalty claims. Under the new precedent, broad similarity in misconduct between the appellant and the comparator(s) was sufficient to shift the burden to the agency to explain the difference in treatment, and the universe for potential comparators was seemingly limitless. *See Figueroa*, 119 M.S.P.R. 422, ¶¶ 3‑4, 10-12; *Villada*, 115 M.S.P.R. 268, ¶¶ 10-12; *Woebcke*, 114 M.S.P.R. 100, ¶¶ 19‑22; *Lewis*, 113 M.S.P.R. 657, ¶¶ 5‑15.

¶12    In announcing its "more flexible approach" to disparate penalties claims, the Board relied in large part on a 2009 decision from our reviewing court. In *Williams*, 586 F.3d 1365, the Federal Circuit remanded an appeal to the Board for

further development of the record as to the agency's treatment of an alleged comparator. *Id.* at 1368-69. Previously in that case, the administrative judge had found the comparator evidence irrelevant because the comparator was not in the same chain of command as the appellant. *Id.* at 1368. The court found that "[w]hile the fact that two employees are supervised under different chains of command may sometimes justify different penalties," the record before it did not justify the alleged disparity in treatment, particularly because the appellant was a mere participant in a tax fraud scheme orchestrated by the comparator. *Id.* at 1368-69. Applying *Williams*, the Board in *Lewis* held that there must be enough similarity between both the nature of the misconduct and the other factors to lead a reasonable person to conclude that the agency treated similarly situated employees differently, but that the Board would not have "hard and fast rules regarding the 'outcome determinative' nature of these factors." *Lewis*, 113 M.S.P.R. 657, ¶¶ 15, 21.

¶13    Under the binding precedent of *Williams*, a comparator need not always have to be in the same work unit or under the same supervisor.[3] *Williams*, 586 F.3d at 1368-69. Thus, the Board's pre-*Williams* statements to the contrary are no longer valid. Nevertheless, while no single factor is outcome determinative, the fact that two employees come from different work units and/or

---

[3] A panel of the Federal Circuit recently held that "[a] comparator employee is an employee that 'was in the same work unit, with the same supervisor, and was subjected to the same standards governing discipline.'" *Miskill v. Social Security Administration*, 863 F.3d 1379, 1384 (Fed. Cir. 2017) (quoting *Lewis*). To the extent this statement can be read as an absolute requirement that comparator employees be in the same work unit with the same supervisor, it conflicts with the prior panel decision in *Williams*, in which the court held that "the fact that two employees are supervised under different chains of command *may sometimes* justify different penalties." *Williams*, 586 F.3d at 1368 (emphasis supplied). We remain bound by *Williams*, the earlier panel decision. *See Deckers Corporation v. United States*, 752 F.3d 949, 959, 966 (Fed. Cir. 2014) (explaining that only an en banc court opinion, intervening Supreme Court precedent, or Congressional change of an underlying statute may overrule prior precedential panel decisions).

supervisory chains remains an important factor in determining whether it is appropriate to compare the penalties they are given. In most cases, employees from another work unit or supervisory chain will not be proper comparators. In *Williams*, the court emphasized the fact that the comparator had originated and organized a tax fraud scheme in which Mr. Williams was one of several participants. *Id.* at 1366-69. Given the unusually close connection between the two employees' misconduct in that case, the court found that the agency needed to justify the alleged disparity in the discipline they received.[4] The unique circumstances in *Williams* illustrate that there must be a close connection between the misconduct or some other factor for an employee from another work unit or supervisory chain to be a proper comparator for disparate penalty purposes. The universe of potential comparators will vary from case to case, but it should be limited to those employees whose misconduct and/or other circumstances closely resemble those of the appellant.

¶14 Prior to *Williams*, a panel of the Federal Circuit held that when an employee raises an allegation that he received more severe discipline than another employee, the proper inquiry is whether the agency *knowingly* treated employees differently "in a way not justified by the facts, and intentionally for reasons other than the efficiency of the service." *Facer v. Department of the Air Force*, 836 F.2d 535, 539 (Fed. Cir. 1988). To the extent the panel in *Williams* intended to remove the knowledge portion of the disparate penalty analysis, as we similarly noted, *supra*, in footnote 3, we are bound to follow the court's previous analysis, as set forth in the court's earlier panel decision in *Facer*, which includes the knowledge portion. *See Deckers Corporation v. United States*, 752 F.3d 949, 959, 966 (Fed. Cir. 2014) (holding that, "[i]n this Circuit, a later panel is bound

---

[4] Mr. Williams alleged that the agency reemployed the comparator, an assertion the agency disputed. *Williams*, 586 F.3d at 1368-69. The court remanded the appeal for further development of the factual record. *Id.* at 1369.

by the determinations of a prior panel, unless relieved of that obligation by an en banc order of the court or a decision of the Supreme Court[]"). Thus, we overrule *Lewis* and subsequent cases to the extent they have deviated from the standard set forth in *Facer*. In assessing an agency's penalty determination, the relevant inquiry is whether the agency knowingly and unjustifiably treated employees differently.

¶15 Since 2010, the Board has used its "flexible" approach to disparate penalty claims as a basis for mitigating agency-imposed penalties. For example, in *Portner v. Department of Justice*, 119 M.S.P.R. 365, ¶¶ 2-6, 9, 16-22 (2013), the Board mitigated the removal of a supervisor who operated his official Government vehicle (OGV) and made multiple false statements to agency employees and the police regarding his actions in an attempt to hide the fact that he parked the OGV in a parking lot adjacent to a Hooters restaurant, where he consumed alcohol and ate dinner. In reducing the penalty to a 45-day suspension, the Board relied in part on evidence that other employees who had been charged with misuse of an OGV and other misconduct had received lesser penalties, even though none of the comparators had been charged with both misuse of an OGV and making false statements, like the appellant. *Id.*, ¶¶ 20-22. The Board found that, although the misconduct of the comparators was not the same as the appellant's, it "appear[ed] at least as serious as the appellant's wrongdoing" and that the agency failed to offer a sufficient explanation for the significantly harsher penalty imposed on the appellant. *Id.*, ¶¶ 21‑22.

¶16 In *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶¶ 2-13, 20-29 (2012), the Board affirmed an administrative judge's decision mitigating the removal of a mail handler who was arrested near agency property while on duty and later convicted of a felony, unlawful possession of a controlled substance. In mitigating the removal to a 90-day suspension, the administrative judge cited another employee who worked at the same facility as the appellant and was not removed after being charged with drug possession. *Id.*, ¶¶ 3, 11, 13. The Board

recognized several differences between the appellant's circumstances and those of the comparator, including that the comparator was charged with possession of marijuana only, whereas the appellant was charged with possession of both cocaine and marijuana, and that the comparator was not arrested on or near agency property. *Id.*, ¶¶ 21-22. Nevertheless, the Board determined that the comparison between the two penalties was appropriate because the comparator had engaged in "a more serious act" by attempting to smuggle marijuana into a prison facility. *Id.*

¶17 The Board's disparate penalty analysis in cases like *Portner* and *Boucher* represents a departure from the standard set forth in *Douglas*, which calls for comparison with penalties "imposed upon other employees *for the same or similar offenses.*" *Douglas*, 5 M.S.P.R. at 305 (emphasis added). The Board in *Portner* and *Boucher* did not find that the comparators had engaged in the same or similar offenses as the appellants. Instead, the Board found comparisons of the penalties appropriate in those cases because the comparators' misconduct was "as serious as" or "more serious" than that of the appellants. *Portner*, 119 M.S.P.R. 365, ¶ 22; *Boucher*, 118 M.S.P.R. 640, ¶ 22. We overrule *Portner* and *Boucher* to the extent they held that the disparate penalty analysis should extend beyond the same or similar offenses. The Board should not attempt to weigh the relative seriousness of various offenses in order to determine whether two employees who committed different acts of misconduct were treated disparately.

¶18 Additionally, the consistency of the penalty with those imposed upon other employees for the same or similar offenses is simply one of a nonexhaustive list of 12 factors that are relevant for consideration in determining the appropriateness of a penalty. *Douglas*, 5 M.S.P.R. at 305-06. The Board has frequently stated that the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibility, is the most important factor in assessing the reasonableness of a penalty. *E.g.*, *Batara v. Department of the Navy*, 123 M.S.P.R. 278, ¶ 8 (2016); *Spencer v. U.S. Postal Service*, 112 M.S.P.R.

132, ¶ 7 (2009). Under the Board's post-*Lewis* standard, in some cases the consistency of the penalty has become not only more important than any of the other *Douglas* factors, it has become the sole outcome determinative factor. We hereby reiterate that the consistency of the penalty is just one of many relevant factors to be considered in determining an appropriate penalty. Therefore, while the fact that one employee receives a more severe penalty than that imposed on a comparator who has committed the same or similar misconduct should be considered in favor of mitigating the penalty in a given case, mitigation is by no means required in all such cases. There often will be a range of penalties that would fall within the tolerable limits of reasonableness in a given case. That an agency chooses to impose a penalty at the more lenient end of that range in one case should not mean that it cannot impose a penalty at the more severe end of that range in another case.[5]

¶19    In light of our reinstatement of the former legal standard for analyzing disparate penalty claims, we now turn to the appellant's argument that he was improperly denied discovery regarding potential comparators. PFR File, Tab 1 at 12-13. Specifically, the appellant sought information regarding the treatment of employees agency-wide who had engaged in similar misconduct. 0014 IAF, Tab 11 at 20. The agency objected to the appellant's request as overbroad and limited its response to employees at the Los Angeles P&DC. *Id.* at 32-33. The appellant reiterated his request for agency-wide information. *Id.* at 60. The agency reiterated its objections, but it did supplement its discovery response with information regarding EAS employees within the Pacific Area (i.e., California

---

[5] There is no guarantee that a prior agency penalty determination even fell within the tolerable limits of reasonableness. Thus, the consistency called for under *Villada*, *Woebcke*, and *Lewis* might be rooted in an earlier disciplinary decision that was unwise, meaning that a manager could be forced to go easy on an employee who committed serious misconduct because of the *unwarranted* leniency of some other manager in the past.

and Hawaii) who were charged with arguably similar misconduct over the prior 2 years. 0014 IAF, Tab 18 at 225. The appellant asked the administrative judge to compel the agency to produce information about potential comparators agency-wide. 0014 IAF, Tab 11 at 4-12, Tab 19. The administrative judge denied the appellant's motion to compel, finding the requests to be "overbroad and burdensome and not likely to lead to the discovery of relevant admissible evidence." 0014 IAF, Tab 74 at 1-2.

¶20    An administrative judge has broad discretion in ruling on discovery matters, and absent an abuse of discretion the Board will not find reversible error in such rulings. *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016). We find no abuse of discretion in this matter, particularly in light of the above reinstatement of our former legal standard for analyzing disparate penalty claims. The agency provided information regarding potential comparators within reasonable geographic and temporal limits. Information regarding the treatment of employees across the country is simply not likely to lead to the discovery of admissible evidence regarding whether the agency knowingly and unjustifiably treated employees differently.

¶21    Beyond his arguments regarding discovery, the appellant offers nothing more than speculation regarding the treatment of similarly situated employees. "Had the record been developed," he argues on review, "the evidence would have likely shown that employees with over 30 years of service, and no discipline with numerous high profile awards received a suspension or letter of warning for engaging in the same or similar conduct." PFR File, Tab 1 at 13. In fact, the only evidence regarding the treatment of employees who engaged in conduct that was at all similar to the appellant's indicates that those employees were either demoted or removed. Hearing Transcript (HT) at 666 (testimony of the deciding official). Thus, we find that the appellant has not shown that the administrative judge erred in her consideration of the consistency of the penalty.

<u>The appellant has not shown that the agency violated his due process rights.</u>

¶22 The appellant argues that the agency violated his due process rights because the deciding official contacted an official at agency headquarters about one of the specifications without notifying the appellant of that contact. PFR File, Tab 1 at 16-18. The deciding official testified that there was conflicting information as to whether the appellant was authorized to make the contract changes that formed the basis of the first specification of the improper conduct charge. The deciding official therefore contacted an official at agency headquarters to find out whether the appellant's actions were in fact improper. HT at 697-700 (testimony of the deciding official).

¶23 Pursuant to the Federal Circuit's decisions in *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed. *See Norris v. Securities & Exchange Commission*, 675 F.3d 1349, 1354 (Fed. Cir. 2012); *see also Gray v. Department of Defense*, 116 M.S.P.R. 461, ¶ 6 (2011). An employee's due process right to notice extends to both ex parte information provided to a deciding official and information personally known to the deciding official, if the information was considered in reaching the decision and was not previously disclosed to the appellant. *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶ 7 (2012). *Ward*, *Stone*, and their progeny recognize, however, that not all ex parte communications that introduce new and material information to the deciding official rise to the level of a due process violation. *Solis*, 117 M.S.P.R. 458, ¶ 8.

¶24 In *Stone*, the Federal Circuit identified the following factors to be used to determine if ex parte information is new and material: (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and

(3) whether the communication was "of the type likely to result in undue pressure on the deciding official to rule in a particular manner." *Stone*, 179 F.3d at 1377. Ultimately, we must determine "whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id.*

¶25    A deciding official does not violate an employee's due process rights by initiating an ex parte communication that only confirms or clarifies information already contained in the record. *Blank v. Department of the Army*, 247 F.3d 1225, 1229 (Fed. Cir. 2001). On the other hand, information obtained from an ex parte communication may be considered new and material if it constitutes a significant departure from evidence already in the record and the deciding official considers it in reaching a decision. *See Young v. Department of Housing & Urban Development*, 706 F.3d 1372, 1376-78 (Fed. Cir. 2013).

¶26    We find that the ex parte communication in this case does not constitute a due process violation. The agency charged the appellant with improper conduct for his actions regarding the contract changes. 0014 IAF, Tab 4 at 139. The deciding official reached out to the official at headquarters because there was some indication in the record that the appellant's actions may not have been improper. HT at 697-700; 0155 IAF, Tab 6 at 64. The effect of the ex parte communication appears to have been to confirm to the deciding official that the appellant's actions were in fact improper, just as the agency indicated in the notice of proposed removal. Therefore, we find that the ex parte communication in this case did not introduce new and material information to the deciding official. Rather, it merely clarified or confirmed information that was already in the record. *See Mathis v. Department of State*, 122 M.S.P.R. 507, ¶¶ 12, 16 (2015) (applying the *Stone* factors and finding no due process violation when the deciding official contacted a human resources representative to determine

whether allegations made in response to the proposed removal were supported by the facts).

<u>The appellant failed to show that his demotion was *ultra vires* or otherwise procedurally improper.</u>

¶27    The appellant alleges that the decision to demote him was actually made by another agency official and communicated to the deciding official; he argues that the action is therefore *ultra vires* and should be reversed as not in accordance with law. PFR File, Tab 1 at 19-22. Agency actions have been found to be not in accordance with law when the individual taking the action lacked the legal authority to do so. For example, in *Hamilton v. U.S. Postal Service*, 58 M.S.P.R. 486, 487-88 (1993), the Board found that a demotion was not in accordance with law because the deciding official had retired from the agency prior to issuing the decision. In *McCollum v. National Credit Union Administration*, 417 F.3d 1332, 1339 (Fed. Cir. 2005), the Federal Circuit held that a removal was not in accordance with law because the only entity within the agency with the authority to authorize the appellant's removal never did so. Here, by contrast, there is no claim that the deciding official lacked the authority to demote the appellant. Therefore, that action was not *ultra vires*.

¶28    Nevertheless, the Board does require that the ultimate decision regarding an adverse action be made by the deciding official, not by some other individual. *See Fontes v. Department of Transportation*, 51 M.S.P.R. 655, 668 (1991). Here, the deciding official testified that the decision to demote the appellant was his alone. HT at 704-05 (testimony of the deciding official). The appellant points to testimony from another agency official who stated that he told the deciding official to place the appellant in the EAS-19 position. PFR File, Tab 1 at 19-22. However, the official could not recall when that conversation took place, except that it was sometime before December 1, 2014. HT at 793-94 (testimony of the Manager, Network Operations for the Pacific Area). The decision demoting the appellant was issued on November 26, 2014. 0014 IAF, Tab 7 at 7. Thus, even if

the conversation took place as the official claimed, it may have taken place after the decision to demote the appellant already had been made. Accordingly, we find that the appellant failed to show that the decision to demote him was made by someone other than the deciding official. *See Gores v. Department of Veterans Affairs*, 68 M.S.P.R. 100, 121 (1995) (finding no harmful procedural error when the appellant failed to show that the deciding official did not make the ultimate decision), *rev'd on other grounds*, 132 F.3d 50 (Fed. Cir. 1997) (Table).

The appellant has not shown that the administrative judge erred in her credibility determinations.

¶29     The appellant argues that the administrative judge erred in crediting the testimony of one of the agency's key witnesses because that witness had been charged with several types of misconduct. PFR File, Tab 1 at 11, 23-24. He also argues that the witness was biased against the appellant. *Id.* The administrative judge applied the *Hillen* factors[6] and found the testimony of the agency's witness to be more credible than that of the appellant. ID at 6-7.

¶30     The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge found the witness's testimony to be more consistent with the

---

[6] To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

other evidence than the appellant's. She also found the appellant's testimony to be inherently improbable. In addition, the administrative judge explicitly cited the respective demeanors of the witness and the appellant during their testimony. ID at 6-7. We find the administrative judge's credibility determinations to be well reasoned and supported by the record, and we find that the appellant has not presented sufficiently sound reasons for overturning those determinations.[7]

<u>The penalty of demotion was within the tolerable limits of reasonableness.</u>

¶31   In addition to his arguments regarding disparate penalty, the appellant challenges other aspects of the administrative judge's penalty analysis. First, the appellant argues that the administrative judge failed to properly consider the adequacy and effectiveness of alternative sanctions. In support of his argument, the appellant cites the deciding official's testimony that he did not consider giving the appellant a suspension or letter of warning. PFR File, Tab 1 at 13-14. However, the deciding official testified that the appellant's misconduct made him "unsuitable to manage other people." HT at 664 (testimony of the deciding official). When pressed about why he did not give the appellant a letter of warning, the deciding official testified that it was not a viable option because of the nature of the misconduct and the appellant's position. HT at 701-02 (testimony of the deciding official). We find no error in the deciding official's consideration of possible lesser sanctions.

¶32   The appellant also argues that the administrative judge, when assessing the penalty, failed to properly consider his lack of training. PFR File, Tab 1 at 14-16. The testimony he cites in support of that argument relates to one specification of the improper conduct charge dealing with changes to transportation contracts. *Id.* at 14-15. The appellant does not argue that there was a lack of training or notice

---

[7] The appellant has not otherwise challenged the administrative judge's findings regarding the charges. We have reviewed those findings and see no basis for overturning them.

regarding any of the other charges or specifications. Even if he is correct that he was not properly trained on the rules governing contract changes, we find that it is not a sufficient basis to mitigate the penalty.

¶33    The deciding official testified in detail regarding his consideration of each of the *Douglas* factors. HT at 660-72 (testimony of the deciding official). We agree with the administrative judge that the deciding official properly considered the relevant *Douglas* factors and that the penalty of demotion is within the tolerable limits of reasonableness for the sustained misconduct. *Cf. Gonzalez v. Department of the Air Force*, 51 M.S.P.R. 646, 654 (1991) (affirming the removal of an employee with 24 years of service and no prior disciplinary record for misuse of position and unauthorized off-duty employment).

## ORDER

¶34    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.