# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DERICK ESHELMAN,<br>　　　　　Appellant,<br><br>　　　　v.<br><br>DEPARTMENT OF THE AIR FORCE,<br>　　　　Agency. | DOCKET NUMBER<br>DC-0752-15-0222-I-2<br><br><br>DATE: January 18, 2023 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Ryan Green, Esquire, Washington, D.C., for the appellant.

Sandra Fortson, Joint Base Andrews, Maryland, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt issues a separate concurring opinion.

### FINAL ORDER

¶1 　　The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 14-day suspension. For the reasons set forth below, the agency's petition for review is DISMISSED as untimely filed without good cause shown. 5 C.F.R. § 1201.114(e), (g).

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**BACKGROUND**

¶2     The following facts are further detailed in the initial decision.   The appellant held the Fire Chief position at Royal Air Force Croughton (RAFC). *Eshelman v. Department of the Air Force*, MSPB Docket No. DC-0752-15-0222-I-1, Initial Appeal File (IAF), Tab 1 at 1; *Eshelman v. Department of the Air Force*, MSPB Docket No. DC-0752-15-0222-I-2, Refiled Appeal File (RAF), Tab 15, Initial Decision (ID) at 2.[2]   In 2013, the agency's Office of Special Investigations (AFOSI) opened an investigation after receiving an anonymous tip that the appellant was committing fraud.   ID at 2.   The AFOSI later concluded that the appellant had knowingly scheduled firefighters to an improper work pattern (embedded schedule) that allowed them to collect a higher rate of pay from 2010 through 2013, at a cost of approximately $263,000.   *Id.*; IAF, Tab 8 at 95.

¶3     In July 2014, the agency proposed the appellant's removal based on a single charge of conduct unbecoming a Federal employee, with three corresponding specifications.   ID at 3; IAF, Tab 1 at 9-11.   The deciding official sustained the removal action, effective November 2014.   ID at 3; IAF, Tab 1 at 12-13.   The appellant challenged his removal in the instant appeal.   IAF, Tab 1 at 1-6.

¶4     After holding the requested hearing, the administrative judge sustained the lone charge along with each of the underlying specifications and found nexus, ID at 3-13, but mitigated the removal to a 14-day suspension, ID at 14-19.   The agency has filed a petition for review, arguing that the administrative judge erred in mitigating the penalty.   *Eshelman v. Department of the Air Force*, MSPB Docket No. DC-0752-15-0222-I-2, Petition for Review (PFR) File, Tab 1.   The appellant has filed a response, and the agency has replied.   PFR File, Tabs 3-5.

---

[2] The administrative judge dismissed the initial appeal without prejudice for automatic refiling at a later date, resulting in the two docket numbers associated with this one matter.  IAF, Tab 34.

**ANALYSIS**

¶5        A petition for review generally must be filed within 35 days after the date of the issuance of the initial decision, or if the party filing the petition shows that the initial decision was received more than 5 days after it was issued, within 30 days after the party received the initial decision. *Palermo v. Department of the Navy*, 120 M.S.P.R. 694, ¶ 3 (2014); 5 C.F.R. § 1201.114(e). The Board will waive the time limit for filing a petition for review only upon a showing of good cause for the delay in filing. *Palermo*, 120 M.S.P.R. 694, ¶ 4. The party who submits an untimely petition for review has the burden of establishing good cause for the untimely filing by showing that he exercised due diligence or ordinary prudence under the particular circumstances of the case. *Id.* To determine whether a party has shown good cause, the Board will consider the length of the delay, the reasonableness of his excuse and the party's showing of due diligence, whether he is proceeding pro se, and whether he has presented evidence of the existence of circumstances beyond his control that affected his ability to comply with the time limits or of unavoidable casualty or misfortune which similarly shows a causal relationship to his inability to timely file his petition. *Id.*

¶6        In this case, because the initial decision was issued on July 22, 2016, the petition for review was due by August 26, 2016. ID at 22; *see Palermo*, 120 M.S.P.R. 694, ¶ 3; 5 C.F.R. § 1201.114(e). The agency filed its petition through the Board's e-Appeal system on August 27, 2016, at approximately 12:13 a.m., several minutes after the deadline for doing so. PFR File, Tab 1. Because the filing appeared untimely, the Board's e-Appeal system automatically generated questions concerning timeliness, to which the agency's representative responded as follows:

> The PFR was filed prior to the deadline, but did not file. Instead, when I went to the logged on [sic] to submit the attachments, it had not been filed. The second attempt to file it with the documents resulted in the same problem. It appeared that the documents were being filed, but again, they were not filed. The final attempt resulted

> in the documents being untimely. A check of [e-Appeal] will verify that the documents were timely filed.

*Id.* at 4.[3]

¶7    The Clerk of the Board issued an acknowledgment letter, instructing the agency that an untimely petition for review must be accompanied by a motion to either accept the filing as timely, and/or waive the time limit for good cause. PFR File, Tab 2 at 1 (citing 5 C.F.R. § 1201.114(g)). The letter further instructed the agency that if it wanted to file the aforementioned motion, the agency must include a statement signed under penalty of perjury or an affidavit showing that the petition was either timely or good cause existed for the untimeliness. *Id.* at 1-2. It also included a form for doing so, and provided a deadline of September 23, 2016. *Id.* at 7-8.

¶8    Despite the instructions contained in the acknowledgment letter, the agency did not submit a separate sworn statement, affidavit, or further explanation for the untimely filing by the September 23, 2016 deadline. Instead, in its October 1, 2016 reply brief, the agency argued that it had presented good cause. PFR File, Tab 4 at 4-8. With that reply brief, the agency also submitted a complaint filed with the Board's Technical Support Team, where the agency reported attempting to file the petition at least twice within the 20 minutes leading up to the deadline for doing so, but having problems doing so.[4] *Id.* at 18-19.

¶9    A review of the Board's e-Appeal logs shows that the agency did access the system to start the process of filing a pleading on August 26, 2016, at 11:38 p.m. However, they do not reflect any attempt to submit the pleading until August 27, 2016, at 12:13 a.m. The logs reflect one error, but that error occurred after the

---

[3] The agency's representative answered "yes" to whether she declared, under penalty of perjury, the facts asserted regarding the timeliness of the petition. PFR File, Tab 1 at 4.

[4] The agency described the problem to the Board's Technical Support Team citing both August 22, 2016, and August 26, 2016, as the dates of attempted filing. PFR File, Tab 4 at 18. However, it appears that the reference to August 22, 2016, was a typographical error.

filing deadline, and was caused by the agency attempting to submit the petition a second time within seconds of the 12:13 a.m. submission, while the initial submission was still processing.

¶10 In considering allegations that an untimely filing was caused by technical difficulties, the Board has reached differing conclusions based on the particular circumstances of each case. *Compare Boykin v. U.S. Postal Service*, 104 M.S.P.R. 460, ¶ 6 (2007) (excusing a 1-day delay in filing when an appellant's representative reported making multiple attempts to timely file and the Board's records reflected a high incidence of users reporting problems with the e-Appeal system during the date in question), *Wiggins v. Department of the Air Force*, 113 M.S.P.R. 443, ¶¶ 7, 9 (2010) (excusing a petition that was untimely by 4 minutes when the appellant was pro se and had attempted to create a new pleading four times in the days leading up to his untimely filing), *and Social Security Administration v. Price*, 94 M.S.P.R. 337, ¶ 7 (2003) (finding that the agency exercised due diligence and showed good cause for filing a petition for review 34 minutes late when its attorney submitted a sworn statement indicating that she began sending the petition prior to the filing deadline but had technical problems with a fax machine), *aff'd*, 398 F.3d 1322 (Fed. Cir. 2005), *with Palermo*, 120 M.S.P.R. 694, ¶¶ 5-10 (declining to excuse a 7-day delay for claimed difficulties with e-Appeal when, inter alia, the appellant's representative was familiar with e-Appeal and failed to submit a motion showing good cause), *and Gaetos v. Department of Veterans Affairs*, 121 M.S.P.R. 201, ¶ 6 (2014) (declining to excuse a petition that was untimely by 3½ hours when the petitioner failed to establish a good reason for the delay). Under the particular circumstances of this case, we find that the agency has failed to establish good cause for its untimely petition.

¶11 Although the agency's petition for review was untimely by mere minutes, we are not persuaded by the explanation provided. The agency's representative is familiar with the e-Appeal system, having used it throughout this appeal. *E.g.*,

IAF, Tab 3. She is also familiar with the potential consequences of her untimeliness, having been sanctioned for her untimeliness below. Hearing Transcript 2 (HT2) at 5-11.[5] Nevertheless, the Board's e-Appeal logs indicate that she did not log into the system to begin the process of filing the petition for review until 11:38 p.m. on the day it was due. *See generally Baker v. Department of Justice*, 41 M.S.P.R. 25, 27 (1989) (recognizing that if a party delays the filing of a petition until the eleventh hour, that party bears the risk that unforeseen circumstances could prevent the timely filing of that petition). Moreover, as detailed above, although the agency asserts that there were two failed attempts at filing the petition before the deadline to do so, the Board's e-Appeal logs reflect otherwise. PFR File, Tab 2 at 1-2, 7-8; *supra* ¶ 9.

¶12      Accordingly, we dismiss the petition for review as untimely filed. This is the final decision of the Merit Systems Protection Board regarding the timeliness of the petition for review. The initial decision remains the final decision of the Board regarding the agency's removal action.

---

[5] The agency's lack of timeliness was a persistent issue below. Among other things, the agency's representative failed to submit the agency file until more than 2 weeks after the deadline for doing so, indicating that it was an unintentional error stemming from a misplaced email. *Compare* IAF, Tab 2 at 7, *with* IAF Tab 5 at 1-2. She also waited until the afternoon before the original hearing date to reschedule, citing difficulties obtaining video-teleconference connectivity for certain witnesses, after the appellant had already travelled from Illinois to Washington, D.C. for the hearing. IAF, Tabs 25, 29. In another instance, the agency's representative failed to respond to emails and motions from opposing counsel in a timely manner, reporting that technical problems prevented her from accessing email for a full week. *Compare* RAF, Tab 1 at 4, 7, Tab 2 at 4, 8, *with* RAF, Tab 4 at 1. Lastly, she was untimely for each of the rescheduled hearing days, citing car troubles, traffic, trouble finding parking, and rain, for which the administrative judge issued sanctions in the form of precluding the agency from cross examining certain witnesses. HT2 at 5-11.

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and

to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board
Washington, D.C.

¶1      I concur in the opinion of the Board that the agency's petition for review should be dismissed as untimely filed without good cause shown.  Although the initial decision is therefore the final decision of the Board, *see* 5 C.F.R. § 1201.113(b), I write separately to express my disagreement with the administrative judge's determination to mitigate the penalty of removal to a 14-day suspension.

¶2      The agency removed the appellant from his GS-12 Fire Chief position at Royal Air Force (RAF) Croughton based on a charge of conduct unbecoming a Federal employee.  *See* MSPB Docket No. DC-0752-15-0222-I-1, Initial Appeal File (IAF), Tab 1 at 9.  In essence, the agency determined that for nearly 3 years, the appellant worked, and allowed his subordinate employees to work, an unauthorized schedule that resulted in salary overpayments, even after being told this schedule was unauthorized.  *See id.*  The administrative judge found the agency proved its charge, including all specifications, by preponderant evidence.  Initial Decision (ID) at 3-13.  He also found a nexus between the sustained misconduct and the efficiency of the service.  ID at 13-14.  I agree with these findings.

¶3      In mitigating the penalty, the administrative judge relied on several factors. First, he considered that a Fire Chief at another RAF—RAF Alconbury—"utilized the embedded schedule for himself, and at least two others, until June 2012," but was not disciplined.  ID at 15-18.  The deciding official testified there were no comparable cases under his command at RAF Croughton.  Hearing Transcript (June 22, 2016) (HT1) at 45; *see also* IAF, Tab 8 at 31 (the deciding official

stating on his *Douglas* factors worksheet, "I have no other cases to compare with this one"). While the deciding official "had heard the rumor . . . that there were other potential violations of this nature" at other bases, he was "not the commander at those locations" and was "not familiar with what they would have or could have done" or "how they handled that discipline." HT1 at 45; *see also id.* at 87 ("I have no understanding of who the other personnel were or who would've been using the schedule. I just heard that Alconbury in general was using the schedule."). The relevant inquiry is whether the agency knowingly and unjustifiably treated employees differently. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 14. A person generally does not have a legally protected interest in the evenness of a misconduct penalty assessed on him as compared to others, and there is a possible exception to this rule only if employees are knowingly treated differently. *Facer v. Department of the Air Force*, 836 F.2d 535, 539 (Fed. Cir. 1988); *Rogers v. Department of Defense Dependents Schools*, 814 F.2d 1549, 1555 (Fed. Cir. 1987) (explaining that "[d]isparate treatment requires that employees knowingly be treated differently" and considering that even if other employees had performance deficiencies similar to the appellant's, there was no evidence that the deciding official was aware of such deficiencies). Given the deciding official's undisputed lack of knowledge regarding potential comparator employees outside his authority,[1] I do not believe it was appropriate for the administrative judge to consider this employee for mitigation purposes.

¶4   Second, the administrative judge found the agency "failed to show by preponderant evidence that the appellant deliberately disregarded the rules as he

---

[1] The appellant asserts he was "in the same chain of command" as the RAF Alconbury comparator because "the 501 Wing and its ultimate commander had responsibilities over both Croughton and Alconbury." Petition for Review File, Tab 3 at 14. However, the deciding official was not the wing commander. Rather, as the group commander, he was subordinate to the wing commander, and was only responsible for three installations (RAF Croughton, RAF Fairford, and RAF Welford). HT1 at 11-13, 149.

understood them simply to enrich himself and his coworkers." ID at 18. This conclusion relied in part on the administrative judge's demeanor-based credibility finding concerning the appellant's testimony on this point. ID at 18-19. The Board will overturn such determinations only when it has sufficiently sound reasons to do so. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). I would overturn the administrative judge's credibility finding because it is wholly inconsistent with the appellant's own prior admissions. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The administrative judge also found the agency "failed to prove by preponderant evidence that the appellant's use of the embedded schedule cost the agency more money than it would have cost had the appellant used an appropriate schedule." ID at 19. Again, this finding is inconsistent with the appellant's own prior admissions.

¶5        Specifically, in a signed, sworn statement, the appellant averred:

> Although I felt I had good reasons to work the embedded schedule, the extra money earned from the additional time worked was a benefit that was part of the decision. The money aspect made it worth doing all the extra hours and is and was simply the wrong thing to do. I truely [sic] regret costing the Air Force the additional money . . . I should have listened to those around me and those trying to help get me on the right path.[2]

IAF, Tab 8 at 148. He acknowledged that by fall 2012, he "understood [the embedded schedule] was not a schedule desired to be used for Air Force firefighters," but "[t]he extra hours and money would be nice." *Id.* at 150. In light of the foregoing admissions, I would find preponderant evidence supports the deciding official's conclusion that "the unauthorized schedule was intentional . . . the decision to repeat the mistake was made over several years,

---

[2] The deciding official testified this statement "definitely impacted" his decision because it "showed that [the appellant] acknowledged that there was a money impact to his personal benefit." HT1 at 42-43.

even when others (such as the Air Force Chief or other functional experts) continued to indicate that this was not right." *Id.* at 29-30.

¶6        Third, the administrative judge noted that the appellant "had approximately 20 years of positive service with the agency, having received performance awards and good performance reviews, and having no prior disciplinary record." ID at 19. The deciding official explicitly considered the appellant's "good work for over 20 years" and the fact that he had "no documented disciplinary actions," but apparently found those factors insufficient to outweigh the seriousness of the appellant's misconduct. IAF, Tab 8 at 31. I discern no error with that approach. Indeed, the Board has frequently stated that the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibility, is the most important factor in assessing the reasonableness of a penalty. *Singh*, 2022 MSPB 15, ¶ 18. The deciding official noted: "The offense of working longer hours than authorized is a very serious one." IAF, Tab 8 at 29. He considered the appellant's supervisory role, finding "the level of trust required to be a manager and supervisor of other fire fighters has been tarnished significantly" and that the appellant "cannot continue to service in the leadership role because his trustworthiness is in question." *Id.* at 31-32; *see* HT1 at 26 (deciding official testifying, "there is a high degree of seriousness because of how we manage our fire department, the number of people involved, and the perspective within the community"); *see also Edwards v. U.S. Postal Service*, 116 M.S.P.R. 173, ¶ 14 (2010) (stating that agencies are entitled to hold supervisors to a higher standard because they occupy positions of trust and responsibility). I would defer to the deciding official's determination concerning the seriousness of the sustained misconduct, in relation to the appellant's supervisory role.

¶7        Fourth, the administrative judge concluded the appellant demonstrated rehabilitative potential because he was honest with investigators and expressed remorse for his actions. ID at 19. This is directly contrary to the deciding

official's determination that the appellant "ha[d] no chance of rehabilitation at RAF Croughton" because he held such a prominent position, and his offense was notorious "throughout all the US-led fire departments in the United Kingdom" and "promulgated a poor reputation for the Croughton fire department."  IAF, Tab 8 at 32.  "[T]he rumor about this was fairly pervasive."  HT1 at 29 (testimony of the deciding official).  The deciding official testified, "[S]ince we are a small fire department area, there was zero potential for rehabilitation at this location. Since we are overseas, then basically the only thing to do was to dismiss him." HT1 at 27.  The deciding official also found problematic that the appellant did not apologize for his actions until he was under investigation.  HT1 at 135-38; *see Wynne v. Department of Veterans Affairs*, [75 M.S.P.R. 127](), 137 (1997) (the appellant's "belated, lukewarm expression of remorse" was insufficient to show rehabilitative potential and did not constitute a significant mitigating factor).  He considered whether the appellant could be demoted to a nonsupervisory position and concluded, "When a supervisor makes a mistake, to basically move them down to a worker bee level . . . that would not be conducive to good order of discipline and the morale of the fire department that I had here."  HT1 at 27-28, 152, 168-73; *see also* IAF, Tab 8 at 33 (*Douglas* factors worksheet indicating the deciding official "considered potential reduced punishments," but concluded these other options "would send an inappropriate signal of the expectation to maintain high standards").

¶8    As I noted in my dissent in *Chin v. Department of Defense*, [2022 MSPB 34](), it is clearly not the Board's role to decide what penalty we would impose if we were the deciding officials.  "Mitigation of a penalty by the Board is only appropriate where the agency failed to weigh the relevant factors, or the agency's judgment clearly exceeded the limits of reasonableness."  *Lopez v. Department of the Navy*, [108 M.S.P.R. 384](), ¶ 22 (2008).  The letter of decision, as supplemented by the deciding official's hearing testimony, demonstrates that he properly considered the relevant factors, and that removal was within of the tolerable

limits of reasonableness in this case. Under these circumstances, the agency's penalty determination is entitled to deference. Accordingly, I believe the agency-imposed penalty should not have been disturbed.


/s/
_____
Tristan L. Leavitt
Member