**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SARAFINA A. CROFT,
      Appellant,

      v.

DEPARTMENT OF VETERANS
  AFFAIRS,
      Agency.

DOCKET NUMBER
AT-0752-17-0703-I-2

DATE: August 24, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Amanda Smith</u>, Esquire, Buffalo, New York, for the appellant.

<u>Luis E. Ortiz-Cruz</u>, Esquire, Orlando, Florida, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed the agency's removal action. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the administrative judge's finding that the agency failed to prove its charge, AFFIRM the administrative

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

judge's determination that the appellant failed to establish her affirmative defenses, and SUSTAIN the removal action.

## BACKGROUND

¶2 The appellant was employed as a GS-09 Training Specialist with the Department of Veterans Affairs Medical Center (VAMC) in Orlando, Florida. *Croft v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-17-0703-I-1, Initial Appeal File (IAF), Tab 1 at 1, Tab 5 at 24, 60. On June 5, 2017, the agency proposed her removal based on a single charge of disruptive behavior. IAF, Tab 5 at 60-61. In support of its charge, the agency provided the following specification:

> On May 10, 2017, you were on duty working the 7:30 am – 4 pm tour of duty in the Education Service. At approximately 3:15 pm, you called the [Department of Veterans Affairs (VA)] Crisis Line stating you felt you wanted to kill your supervisor. Upon the arrival of VA Police officers to your office, you again stated multiple times that you wanted to kill your supervisor. You said you wanted to kill your supervisor due to the constant harassment you claim to be under, or words to that effect.

*Id.* at 60. Thereafter, the deciding official sustained the proposed removal. *Id.* at 30-32. The appellant's removal was effective August 11, 2017. *Id.* at 24, 30.

¶3 Subsequently, the appellant filed a Board appeal challenging the removal action and raising affirmative defenses of sex, race, and disability discrimination, as well as reprisal for protected equal employment opportunity (EEO) activity. IAF, Tab 1 at 2, 7-21, Tab 23. Without holding a hearing, the administrative judge issued an initial decision reversing the agency's removal action.[2] *Croft v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-17-0703-I-2, Appeal

---

[2] While the appellant initially requested a hearing, IAF, Tab 1 at 1, she subsequently withdrew her hearing request, *Croft v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-17-0703-I-2, Appeal File (I-2 AF), Tab 5. The administrative judge initially dismissed the appeal without prejudice pursuant to the appellant's motion, IAF, Tab 28, Tab 31, Initial Decision, and the appellant timely refiled her appeal, I-2 AF, Tab 1.

File (I-2 AF), Tab 12, Initial Decision (ID).  Concerning the charge, the administrative judge found that the appellant did not engage in disruptive conduct as alleged because she made her statements to a Veterans Crisis Line (VCL) representative in the context of seeking professional treatment for anxiety and stress she experienced at work.[3]  ID at 7.  The administrative judge found that, accordingly, the agency failed to prove its charge by a preponderance of the evidence and its removal action must be reversed.  *Id.*  The administrative judge then considered the appellant's affirmative defenses and determined that she failed to establish her claims of discrimination and reprisal for protected EEO activity.  ID at 7-12.

¶4    The agency timely filed a petition for review.  Petition for Review (PFR) File, Tab 1.  On review, the agency contends that, contrary to the administrative judge's finding, it proved its charge.[4]  PFR File, Tab 1 at 15, 21-27.  The agency also alleges that the administrative judge erred by precluding rebuttal evidence, crediting the appellant's allegations, and overlooking parts of the record.  *Id.* at 27-32.  The appellant has filed a response to the agency's petition, PFR File, Tab 7, and the agency has filed a reply to the appellant's response, PFR File, Tab 8.[5]

---

[3] The VCL's purpose is "to provide [v]eterans, [s]ervice [m]embers, and their family members, who are in crisis or at risk for suicide, with immediate access to suicide prevention and crisis intervention services."  IAF, Tab 26 at 15.  Among other services, VCL representatives provide "telephone . . . crisis intervention . . . and referrals for mental health treatment."  *Id.*

[4] As part of its petition for review, the agency has provided evidence that it complied with the administrative judge's order for interim relief.  PFR File, Tab 1 at 34, 36, 38, 40.  The appellant does not raise the issue of interim relief on review; therefore, we do not further address it.  PFR File, Tab 7.

[5] The appellant has not filed a cross petition for review challenging the administrative judge's findings regarding her affirmative defenses.  Thus, we do not further address those findings here.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency proved its charge of disruptive behavior.

¶5      The administrative judge found that, to prove a charge of disruptive behavior, an agency must establish the following:  (1) the appellant engaged in the conduct described under the charge; and (2) that the conduct caused a disruption.  ID at 2.  Neither party disagreed below or on review that the agency was required to establish these elements to prove its charge, and we agree that a disruptive behavior charge is comprised of these two elements.[6]  Under its charge, the agency set forth a single specification with a narrative describing the appellant's misconduct.  IAF, Tab 5 at 60.  An agency need not prove every part of the specification underlying its charge to prove the charge.  *See Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 204 (1997) (noting that, to prove its charge, an agency need not establish every portion of the narrative description underlying the charge).  As previously noted, the agency argues on review that it proved its charge.  PFR File, Tab 1 at 15, 21-27.  We agree.[7]

¶6      As noted by the administrative judge, the appellant does not dispute having told the VCL representative that she wanted to kill her supervisor.  ID at 3.  The record reflects that the VCL representative subsequently contacted the VA police and that the police were dispatched to the appellant's location at the VAMC.  IAF, Tab 5 at 71.  The record reflects that the appellant was still on the phone with the VCL representative when the VA police arrived.  *Id.*  While on the phone

---

[6] In setting forth the elements for a charge of disruptive behavior, the administrative judge cited to *Colon v. Department of the Navy*, 58 M.S.P.R. 190, 197-98 (1993).  ID at 2.  In *Colon*, the Board found that, to prove its charge of disorderly conduct, the agency needed to establish that the employee engaged in the actions described under the charge and that the conduct was disorderly.  *Colon*, 58 M.S.P.R. at 197-98.  By analogy, we find that, to prove a charge of disruptive behavior, an agency must establish that an employee engaged in the conduct described under the charge and that the conduct was disruptive.

[7] In light of this finding, we need not reach the agency's arguments that the administrative judge abused his discretion in precluding rebuttal evidence and overlooked record evidence.

with the VCL representative and in the presence of the police, the appellant stated multiple times that she wanted to kill her supervisor. *Id.*

¶7      In addressing whether the statements set forth under the charge caused a disruption, the administrative judge acknowledged that the appellant's statements to the VCL representative were upsetting to the appellant's supervisor and to a coworker, but he found that these employees only became aware of the statements when told by the VA police. ID at 5. Thus, according to the administrative judge's reasoning, the disruption was caused by the VA police and not the appellant. The administrative judge found that the record is devoid of information concerning when a VCL representative must "break confidentiality." *Id.* Citing the Board's decisions in *Larry v. Department of Justice*, 76 M.S.P.R. 348 (1997), and *Powell v. Department of Justice*, 73 M.S.P.R. 29 (1997), the administrative judge noted that the Board has been troubled by cases in which agencies have used statements made in the course of an appellant's contact with a counselor as a basis for discipline. ID at 6.

¶8      We find that the administrative judge's focus on whether the VCL representative improperly "broke confidentiality" is misplaced. The U.S. Supreme Court has recognized, in some circumstances, a licensed psychotherapist-patient privilege in Federal litigation. *Jaffee v. Redmond*, 518 U.S. 1, 15-16 (1996). Under the circumstances here, however, we need not determine whether the appellant's statements to the VCL representative were covered by a privilege that precludes their use in the agency's removal action.[8]

---

[8] It appears that, in his adjudication of the agency's charge, the administrative judge assumed that the appellant's statements to the VCL representative were covered by a privilege. ID at 5-7. However, there is no record evidence indicating that VCL representatives are licensed psychotherapists. Moreover, as the party asserting the privilege, it was the appellant's burden to establish the requirements for invoking the privilege. *See Gubino v. Department of Transportation*, 85 M.S.P.R. 518, ¶ 18 (2000) (stating that a party asserting an evidentiary privilege has the burden of establishing it). The administrative judge, therefore, should not have assumed the existence of a privilege in this case.

Nor must we determine whether it was proper for the VCL representative to share these statements with the police. Assuming arguendo that the appellant's initial statements to the VCL representative were privileged, the record reflects that the appellant repeated these statements several times in the presence of the police, as set forth under the specification. IAF, Tab 5 at 60, 71. The appellant's repetition of these statements in the presence of the police vitiates any privilege. *See Gray v. Government Printing Office*, 111 M.S.P.R. 184, ¶ 13 (2009) (finding that the appellant's repetition of statements initially made to a nurse in front of the nurse and non-medical employees defeated any potential privilege).

¶9        Moreover, contrary to the administrative judge's findings, the Board's decisions in *Larry* and *Powell* are distinguishable from the instant case. In *Larry*, the agency charged the appellant with threatening a supervisor based on statements that the appellant made to a psychotherapist of the agency's Employee Assistance Program (EAP). *Larry*, 76 M.S.P.R. at 355. The Board found that the agency failed to prove its charge because the evidence showed that the appellant made the statements in the course of psychotherapy. *Id.* at 358-59. Similarly, in *Powell*, the agency charged the appellant with threatening to kill five agency employees based on statements he made in a telephone conversation with an EAP counselor. *Powell*, 73 M.S.P.R. at 31-32. The Board found that the appellant in *Powell* was requesting counseling and was not made aware that his statements might not be kept confidential, and, thus, it would be contrary to the policy and

In addition, the administrative judge addressed the appellant's argument that the VCL's representative's disclosure violated agency policy in the context of the charge. ID at 5. This argument, however, constitutes a harmful procedural error claim that the appellant—and not the agency—has the burden of proof on. *See* 5 C.F.R. § 1201.56(c). Moreover, even if this argument were relevant to the charge, the administrative judge did not address the agency's arguments regarding why the VCL representative was required to disclose the appellant's statements to the VA police. PFR Tab 1 at 18-22; IAF, Tab 25 at 17. We are not, therefore persuaded by the administrative judge's reasoning on these issues. However, as explained below, we need not reach these questions in light of our finding that any privilege was vitiated when the appellant repeated her statements to the VCL representative in front of the police.

purpose of the EAP to take action against him. *Powell*, 73 M.S.P.R. at 35-36. The same concerns regarding confidentiality and privilege at issue in *Larry* and *Powell* are not present here where the appellant repeated her statements in front of the VA police. Thus, we find that the Board's decisions in *Larry* and *Powell* are not controlling here.

¶10    Rather, the circumstances in this case are similar to those in *Gray*, 111 M.S.P.R. 184. While at the agency's medical unit, the appellant in *Gray* stated in front of two nurses that he was going to kill his supervisor. *Id.*, ¶¶ 4-5. After the agency's Safety Manager and an Occupational Safety and Health Specialist, who one of the nurses called, arrived on the scene, the appellant again stated that he was going to kill his supervisor in the presence of these two non-medical employees as well as in front of one of the nurses he had initially made this statement to. *Id.*, ¶ 6. The Board found that, even assuming the appellant's initial statements to the nurses were privileged, the appellant's repetition of the statements to the non-medical employees defeated that privilege. *Id.*, ¶ 13. The Board in *Gray* thus considered the appellant's statements in determining whether the agency proved its charge. *Id.*, ¶ 15-16. Similarly, we find here that it is proper for us to consider the appellant's statements made in the presence of the VA police as a basis for the agency's action.

¶11    Having determined that it is appropriate for us to consider these statements, we turn to the issue of whether the statements caused a disruption. Following the appellant's statements to the VA police, the police informed the appellant's supervisor that the appellant had stated that she wanted to kill him.[9] IAF, Tab 5

---

[9] The administrative judge found that the agency presented no legal reason or requirement for the police's disclosure of these statements to the appellant's supervisor. ID at 5. However, to the extent the appellant is arguing that the agency failed to follow its procedures regarding confidentiality, any such allegation is a harmful error claim. Because the appellant has the burden of proof on any such claim, the administrative judge improperly placed the burden of proof on this issue on the agency. *See* 5 C.F.R. § 1201.56(c). Further, pursuant to agency policy, the VA police should offer assistance

at 71, 73, 76. The record reflects that, as a result, the appellant's supervisor suffered anxiety and fear for his safety and that of his family. I-2 AF, Tab 10 at 11. In an email he sent following the May 10, 2017 incident, the appellant's supervisor stated that he found "it incomprehensible that an employee can say she wants to kill her supervisor, but then can return to work the next day as if nothing has happened." IAF, Tab 5 at 95. He expressed a deep concern for the safety of agency employees, stating that he was concerned that the appellant would return to the office and engage in similar behavior. *Id.* He further stated that agency employees did not feel protected by the agency. *Id.* Moreover, in an affidavit, he stated that, as a result of the appellant's statements, he sought law enforcement advice on how to protect himself and his family and increased his use of anti-anxiety medication. I-2 AF, Tab 10 at 11. He said that, absent the anti-anxiety mediation, his sleep would be affected. *Id.*

¶12 The police also informed the Administrative Officer for Education Service (Administrative Officer) that the appellant had stated she wanted to kill her supervisor. *Id.* at 12. The Administrative Officer stated in an affidavit that, after learning about the appellant's statement, she "was nervous and felt fear for [herself] and staff." *Id.* She stated that she subsequently became very aware of her surroundings in an attempt to ensure that the appellant wasn't following her and that the "fear was paralyzing sometimes and made [her] think about getting another job or . . . working from home." *Id.*

¶13 Based on the foregoing, we find that the appellant's statements in the presence of the VA police caused a disruption. Accordingly, we reverse the administrative judge's finding that the agency failed to prove its charge of disruptive behavior, and we sustain the charge.

---

and respond to calls involving allegations of employee generated disruptive behavior, and such incidents must be reported to supervisors. IAF, Tab 5 at 126, 130-31.

<u>The agency established nexus and that the penalty of removal is reasonable under the circumstances.</u>

¶14 Because the administrative judge did not sustain the agency's charge, he did not determine whether the agency established nexus and the reasonableness of the penalty. Thus, we will now make those determinations. To prove nexus, the agency must show a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish her duties satisfactorily or some other legitimate Government interest. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 10 (2010). It is well settled that there is sufficient nexus between an employee's conduct and the efficiency of the service where the conduct occurred at work. *See, e.g.*, *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987) (finding that the agency established nexus where the conduct occurred in part at work). We find that the agency established nexus here because the misconduct occurred at work and, by its very nature, was disruptive to the efficiency of the service. *See Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 11 (2006) (determining that the misconduct at issue—assaulting and threatening a coworker, disrespectful conduct, and unauthorized possessions, use or manufacture of personal tools—is clearly related to the efficiency of the service); *see also Battle v. Department of Transportation*, 63 M.S.P.R. 403, 410 (1994) (finding that threatening a supervisor affects the agency's ability to maintain a safe workplace and thus impinges upon the efficiency of the service).

¶15 Regarding the penalty, where, as here, all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). In *Douglas*, 5 M.S.P.R. at 305-06, the Board articulated a nonexhaustive list of 12 factors that are relevant in assessing the

appropriate penalty for an act of misconduct. These factors include the nature and seriousness of the offense, the appellant's past disciplinary record, her past work record, her potential for rehabilitation, and mitigating circumstances surrounding the offense. *Id.* The agency need not address all 12 factors, merely those that are relevant. *Douglas*, 5 M.S.P.R. at 306. The Board will modify or mitigate an agency-imposed penalty only where it finds that the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Davis*, 120 M.S.P.R. 100, ¶ 6.

¶16 We find that the deciding official appropriately considered the relevant factors in deciding to remove the appellant. IAF, Tab 5 at 26-28, 30. Specifically, the deciding official considered the seriousness of the offense and determined that the nature of the misconduct was "very serious and negatively impacts management's ability to maintain a safe and therapeutic environment for patients and staff members." *Id.* at 26; *see Davis*, 120 M.S.P.R. 457, ¶ 7 (noting that the seriousness of the offense is always one of the most important factors in assessing the reasonableness of an agency's penalty determination). He found that, while the misconduct may not have been intentionally disruptive, it nonetheless had a negative effect on the efficiency of the service. IAF, Tab 5 at 26. The deciding official considered the appellant's potential for rehabilitation, and he noted that he had "no confidence in [her] ability to return to work and perform her duties without like incidents occurring or carrying through with the thoughts she related about wanting to harm her supervisor." *Id.* In addition, the deciding official considered relevant mitigating factors. For example, he considered that the appellant had 14 years of prior Federal service and that she had received a Fully Successful rating for her last performance appraisal. *Id.* at 26, 30, 62. The deciding official also properly considered the medical documentation the appellant provided and found that her medical condition had an effect on her misconduct and was a mitigating factor. *Id.* at 28. He found, however, that there was no evidence that the medical condition had

been remedied. *Id.* Accordingly, he properly determined that the appellant's medical impairment was not a significant mitigating factor. *Id.*; *see Lentine v. Department of the Treasury*, 94 M.S.P.R. 676, ¶ 14 n.3 (2003) (noting that a medical or mental impairment is not a significant mitigating factor in the absence of evidence that the impairment can be remedied or controlled). Furthermore, the deciding official considered lesser penalties and alternative sanctions but determined that, in light of the nature of the offense, any such alternatives would not be appropriate. IAF, Tab 5 at 28.

¶17 In her submissions below, the appellant raised a claim of disparate penalties. IAF, Tab 1 at 18; I-2 AF, Tab 11 at 20-21. Specifically, she alleged that another employee at the Orlando VAMC "expressed thoughts of shooting her supervisors" but was placed on administrative leave and reassigned instead of being removed. I-2 AF, Tab 11 at 20-21. The appellant alleges that the alleged comparator was only removed after a second incident of making threats. *Id.* at 21. The appellant contends that, accordingly, she was subjected to a disparate penalty because she was not provided a "'warning' or offer of reassignment." *Id.*

¶18 The consistency of the penalty with those imposed upon other employees for the same or similar offenses is one factor to be considered in determining the reasonableness of the agency-imposed penalty. *Douglas*, 5 M.S.P.R. at 305. The Board has recently clarified that, in assessing such a claim, the relevant inquiry is whether the agency knowingly and unjustifiably treated employees differently. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 14. The universe of potential comparators will vary from case to case, but it should be limited to those employees whose misconduct and/or other circumstances closely resemble those of the appellant. *Id.*, ¶ 13. Here, the appellant does not allege that the alleged comparator worked in the same unit or under the same supervisor as she did. *Id.* (noting that the fact that two employees are from different work units and/or supervisor chains remains an important factor in determining whether it is appropriate to compare penalties they are given). Moreover, there is no

indication that the alleged comparator's misconduct closely resembled that of the appellant's; for example, there is no evidence that the alleged comparator's conduct involved the police, that the alleged comparator's "thoughts" of harming her supervisors closely resembled the appellant's statements to the police, and that the same mitigating and aggravating factors that are relevant in assessing the penalty in this case also applied to the alleged comparator's case. In addition, there is no indication that the agency knowingly treated the alleged comparator differently from the appellant. Based on the foregoing, we find that the appellant has failed to establish that the agency knowingly and unjustifiably treated employees differently. *Singh*, 2022 MSPB 15, ¶ 14.

¶19 In light of the above, we find that the penalty of removal is within the tolerable limits of reasonableness and that it promotes the efficiency of the service. The agency's removal action is therefore sustained.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and you wish to challenge the Board's rulings on your whistleblower claims only, excluding all other issues, then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    /s/ for _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.