**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| PATRICK J. MCDONOUGH, JR.,<br>　　　　　　Appellant, | DOCKET NUMBER<br>PH-0752-19-0113-I-1 |
| 　　　　v. | |
| DEPARTMENT OF<br>　　TRANSPORTATION,<br>　　　　　　Agency. | DATE:  August 9, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>James W. Richard, II</u>, Esquire, Silver Spring, Maryland, for the appellant.

<u>Maria Surdokas</u>, Esquire, and <u>Rebecca Snowdall</u>, Esquire,
　　Washington, D.C., for the agency.

<u>Rashawn Rich George</u>, Esquire, College Park, Georgia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

　　The appellant has filed a petition for review of the initial decision, which addressed a pair of joined removal appeals, ordering the agency to pay the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

appellant $27,730.64 regarding the first removal and sustaining the second removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in the two appeals, we SEVER the joined removal appeals and address just the second appeal in this decision.[2] We conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review as to the second removal action. Therefore, we DENY the petition for review regarding the same. Except as expressly MODIFIED to address an additional due process claim, we AFFIRM the initial decision's findings about the appellant's second removal.

## BACKGROUND

This decision stems from two appeals that the administrative judge joined for adjudication.[3] In his first appeal, the appellant challenged his December 2016

---

[2] The appellant's other appeal, MSPB Docket No. PH-0752-17-0156-I-4, is addressed in a separate decision. *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-17-0156-I-4, Remand Order (Dec. 13, 2023).

[3] The appellant's first appeal has multiple docket numbers due to dismissals without prejudice to accommodate adjudicatory delays. *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-17-0156-I-1, Initial Appeal File (0156 IAF), Tab 1; *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-17-0156-I-2, Refiled Appeal File (0156-I-2 AF), Tab 1; *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-17-0156-I-3, Refiled Appeal File (0156-I-3 AF), Tab 1; *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-17-0156-I-4, Refiled Appeal File (0156-I-4 AF), Tab 1. The appellant's second appeal has just one docket number. *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-19-0113-I-1, Initial Appeal File

removal from the position of Air Traffic Control Specialist. The removal was based on charges of absence without leave (AWOL) and failure to follow leave procedures. 0156 IAF, Tab 1, Tab 4 at 27-31, 70-73. Well into the adjudication of that appeal, the agency determined that the deciding official had mistakenly denied the appellant due process by engaging in ex parte communication, and consequently, it rescinded the first removal action. 0156-I-2 AF, Tab 24 at 10-12; *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-19-0113-I-1, Hearing Transcript, Day 2 (0113 HT2) at 80 (testimony of the appellant's second-level supervisor). The agency then removed the appellant a second time, 2 years after its original removal action, based on the same misconduct and charges as the first removal. *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-19-0113-I-1, Initial Appeal File (0113 IAF), Tab 3 at 10-13, 34-37. In his second appeal, the appellant challenged this second removal action. 0113 IAF, Tab 1. The administrative judge joined the appeals, developed the records, and held a 3-day hearing before issuing a single decision. 0113 IAF, Tab 46, Initial Decision (ID); 0113 Hearing Transcript, Day 1 (0113 HT1); 0113 HT2; 0113 Hearing Transcript, Day 3 (0113 HT3).

Regarding the second removal action, dated December 2018, the administrative judge first found that the agency proved both specifications underlying its AWOL charge and its lone specification of failure to follow leave procedures. ID at 15-23. Next, she found that the appellant failed to prove his claims of disability discrimination, ID at 24-28, reprisal for requesting reasonable accommodation, ID at 28, due process violations, ID at 30-36, or harmful procedural error, ID at 36-38. Finally, the administrative judge found that the agency proved the requisite nexus and reasonableness of its penalty. ID at 38-42.

The appellant has filed a timely petition for review. *McDonough v. Department of Transportation*, MSPB Docket No. PH-0752-19-0113-I-1, Petition

_____
(0113 IAF), Tab 1.

for Review (0113 PFR) File, Tabs 1-6.  Regarding his second removal, i.e., the subject of this decision, the appellant argues that the administrative judge should have merged the charges and that the agency failed to prove its charges.  *Id*. at 17-22, 27-28.  The appellant also challenges the administrative judge's findings regarding his claims of a due process violation, harmful error, and the reasonableness of the penalty.  *Id*. at 13-17, 23-27.  The agency has not filed a response or cross petition for review.  *See* 0113 PFR File, Tabs 8-11.

## ANALYSIS

<u>The administrative judge properly sustained the second removal action.</u>

Regarding the second removal, the appellant argues that the administrative judge should have merged the charges, 0113 PFR File, Tab 6 at 27-28, and he challenges her findings regarding the agency's proof of its charges, *id*. at 17-22. The appellant also reasserts his due process violation claim, *id*. at 13-17, and his harmful error claim, *id*. at 23-26.  Lastly, the appellant challenges the reasonableness of the agency's penalty.  *Id*. at 26-27.  We have considered the appellant's arguments, but for the following reasons, we disagree.

*The agency met its burden of proving the charged misconduct.*

For its AWOL charge, the agency alleged that the appellant did not report to work and was not in an approved leave status for portions of 2 days, August 23, 2016, and September 25, 2016.  0113 IAF, Tab 3 at 34.  To prove an AWOL charge, an agency must demonstrate that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied.  *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 7; *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 6 (2009).  The administrative judge found that the agency met this burden, ID at 7-8, 16-22, and we agree.

It is undisputed that the appellant was scheduled to work on August 23, 2016, at 5:50 a.m., but he did not appear for work, call his first-line supervisor, or submit any formal sick leave request until 9:20 a.m. on that date.  *E.g.*, ID

at 16-18; 0113 IAF, Tab 4 at 36-37. It is also undisputed that the appellant was scheduled to work on September 25, 2016, at 5:50 a.m., but he overslept and failed to report to work until 7:40 a.m., at which point the appellant requested that his schedule be retroactively amended so that he was not AWOL. ID at 20-21; 0113 IAF, Tab 4 at 37.

Regarding the first date, August 23, 2016, the appellant argues that the applicable collective bargaining agreement (CBA) and agency policy are both silent as to the manner in which an individual must submit a sick leave request, particularly when the request is somewhat unexpected or unplanned. 0113 PFR File, Tab 6 at 17-18. He further argues that his text message to a few coworkers the night before his absence should, therefore, be sufficient to conclude that he had properly requested leave and was not AWOL. *Id*. at 18-22. That text message, sent at 11:45 p.m. on August 22, 2016, stated as follows: "Dude I've been feeling like crap since dinner him [sic] if I'm not up in time to call out tomorrow can you put me down for sick leave." 0156-I-2 AF, Tab 17 at 7-8.

We agree with the administrative judge's well-reasoned analysis about the adequacy of the appellant's efforts to request leave. ID at 16-20. Among other things, the administrative judge recognized that the text message the appellant sent was ambiguous—it did not definitively request sick leave, nor did it suggest that the appellant's sickness would render him unable to wake up in time to decide whether he would be able to appear for his 5:50 a.m. shift and alert the agency accordingly. ID at 16-17. Moreover, when asked about this, the appellant testified that he had been having trouble waking up to his alarm. He did not assert that he was too sick to call in earlier on the morning of August 23, 2016, nearer to the start of his shift. ID at 18 (referencing 0113 HT3 at 29 (testimony of the appellant)). The appellant also failed to send the text message or any other communication to his first-line supervisor until 9:20 a.m., hours after his shift had already begun. ID at 16. According to his first-line supervisor and another agency official, this was typical for the appellant—he was a good but unreliable

Air Traffic Controller, particularly regarding opening shifts. ID at 19 (referencing 0113 HT1 at 20-21, 81 (testimony of first-line supervisor and another manager)). In sum, we agree with the administrative judge's conclusion that the agency proved that the appellant was AWOL for the period at issue on August 23, 2016.

Regarding the second date, September 25, 2016, the appellant argues that the agency had retroactively changed employee shift hours in the past, so it should have done so when he overslept and belatedly arrived for his shift. 0113 PFR File, Tab 6 at 22. The administrative judge addressed this argument below. ID at 20-23. Among other things, she acknowledged evidence that the agency did, at times, approve last-minute schedule changes when there was extreme traffic or other extenuating circumstances and employees requested the change in a timely manner. ID at 21-22. But there is no reason for us to conclude that the agency was ever required to do so or required to do so in this instance when the appellant overslept and did not even contact the agency until more than an hour after the start of his shift. Accordingly, the appellant's arguments about this date on which he was charged AWOL are not convincing.

Turning to the agency's failure to follow leave procedures charge, we note that it concerns one of the same absences underlying the agency's AWOL charge. 0113 IAF, Tab 3 at 34-35. Specifically, the agency alleged that the appellant failed to follow leave procedures on August 23, 2016, because he did not report for work or contact an appropriate official within 1 hour of his scheduled start time to request unscheduled leave. *Id*. The administrative judge analyzed this charge separately and found that the agency met its burden of proof. ID at 23.

On review, the appellant argues that the administrative judge should have merged this charge with the AWOL charge. 0113 PFR File, Tab 6 at 27-28. Although we agree, we find that the administrative judge's error does not require a different result in this appeal.

The Board will merge charges if they are based on the same conduct and proof of one charge automatically constitutes proof of the other charge. *Mann v. Department of Health and Human Services*, 78 M.S.P.R. 1, 7 (1998). In the absence of any rebuttal from the agency regarding the appellant's argument in favor of merging these charges, it is not apparent to us why the charges should not be merged. Proof of one of the agency's charges would constitute proof of the other. Accordingly, we find that the administrative judge should have merged the charges. *See Jones v. Department of Justice*, 98 M.S.P.R. 86, ¶ 16 (2004) (finding that an agency's AWOL charge merged into its charge of failure to follow instructions); *Westmoreland v. Department of Veterans Affairs*, 83 M.S.P.R. 625, ¶ 6 (1999) (merging charges of failure to follow leave-requesting procedures and AWOL), *aff'd*, 19 F. App'x 868 (Fed. Cir. 2001), *overruled on other grounds as recognized by Pickett v. Department of Agriculture*, 116 M.S.P.R. 439, ¶¶ 8-11 (2011).

The fact that one charge has been merged into another does not, however, mean that the duplicative charge is not sustained, or that the appellant's misconduct somehow becomes less serious by virtue of the merger. *Shiflett v. Department of Justice*, 98 M.S.P.R. 289, ¶ 12 (2005). And despite the appellant's suggestion to the contrary, the failure to merge the charges does not require reversal or remand for a new penalty determination. 0113 PFR File, Tab 6 at 27-28; *see Beaudoin v. Department of Veterans Affairs*, 99 M.S.P.R. 489, ¶¶ 11-13, 18-23 (2005) (finding that the agency's charges should have been merged, but still deferring to the agency's choice of penalty because it proved all its charges); *Shiflett*, 98 M.S.P.R. 289, ¶ 12 (finding that, although an agency's charges should have been merged, this did not affect the penalty).

<u>The administrative judge correctly found that the appellant failed to prove his</u>
<u>affirmative defenses.</u>

*The appellant failed to prove that the agency violated his right to due process.*

Below, the administrative judge considered and rejected the appellant's five distinct allegations that he was denied due process with respect to his second removal. ID at 30-36. On review, the appellant describes two alleged due process violations. 0113 PFR File Tab 6 at 13-17. We will address them in turn.

First, the appellant argues that the agency effectively prevented him from responding to the proposed removal. *Id.* at 14-15. In support of this allegation, the appellant describes the following timeline of events: (1) the agency proposed the second removal action in May 2018; (2) the appellant requested an extension of time to respond and sought certain information, which the agency processed through Freedom of Information Act (FOIA) channels and indicated that the deadline for replying to the proposed removal was 15 days after the appellant received "the releasable requested information from the FOIA office"; (3) the agency's FOIA office provided a response in October 2018, but the appellant believed more information was forthcoming;[4] and (4) the deciding official issued his decision on the proposed removal in December 2018, without the appellant's receipt of a further FOIA response and without the appellant expecting him to issue the decision. *Id.*

The administrative judge addressed this allegation below. ID at 30-32. She found that, although the appellant may have been waiting on a further FOIA response, the deciding official understandably considered the appellant's request for information to be a closed matter, clearing the way for his decision. *Id.* Among other things, she noted that for many weeks after the October 2018 FOIA response, the appellant called the deciding official's office each day he was scheduled to work, but neither the appellant nor his attorney ever gave the

_____

[4] At the time of his petition for review, the appellant suggested that he never received any further FOIA response. 0113 PFR File, Tab 6 at 14.

deciding official any indication that they were still awaiting more information or were not replying to the proposed removal because they expected more information. *Id*. We find no basis for concluding otherwise.

An agency's failure to provide a tenured public employee with an opportunity to respond, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum due process of law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). Here, the agency did not deny the appellant that opportunity. The agency proposed the appellant's removal in May 2018, informing him of the right to respond. The agency then waited approximately 7 months before issuing a decision, including the promised 15 days following the FOIA response, along with several additional weeks. *E.g.*, 0113 IAF, Tab 3 at 11-16, 34-108, Tab 18 at 73-75. The appellant could have submitted a response at any point during that extensive period, but he did not. Although the appellant may have sincerely believed that an additional FOIA response was forthcoming and thus delayed his response, we do not agree that the deciding official should have known about his intentions in the absence of evidence that the appellant communicated his intentions. *See Flores v. Department of Defense*, 121 M.S.P.R. 287, ¶ 11 (2014) (finding that, in the absence of any indication that the appellant made a reasonable effort to assert his opportunity to respond, or that the agency denied him his right to respond through action, negligence, or design, the appellant was not denied due process).

Turning to the other due process violation allegation presented on review, the appellant argues that the deciding official improperly considered ex parte information. 0113 PFR File, Tab 6 at 16-17. Specifically, the appellant argues that the deciding official conducted his own research into the appellant's alleged sleep disorder to find that it was not a mitigating factor but failed to inform the appellant of this research. *Id*. at 16-17, 96-98. This argument does not appear to be among the five different due process claims the administrative judge addressed

in the initial decision.[5]  ID at 30-36.  In addition, it is neither among the due process claims the appellant described in his prehearing submission nor specifically described in the administrative judge's prehearing summary of issues. 0113 IAF, Tab 18 at 8-10, Tab 20 at 7-9.  However, the appellant raised it in his closing oral arguments.  0113 IAF, Tab 43 at 25:00-27:00.  Accordingly, we modify the initial decision to address this argument, which is effectively the appellant's sixth basis for alleging that he was denied due process.

A deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed.  *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 23.  An employee's due process right to notice extends to both ex parte information provided to a deciding official and information personally known to the deciding official if the information was considered in reaching the decision and was not previously disclosed to the appellant. *Id*.

The appellant's argument relies upon hearing testimony from the one individual who served as the proposing and deciding official for both of the appellant's removals.  *E.g*., 0113 PFR File, Tab 6 at 16-17, 96-98; 0113 IAF, Tab 3 at 11, 34.  That testimony is somewhat difficult to follow.  The deciding official seemed to indicate that the appellant requested an accommodation for a sleep disorder and submitted some form of medical documentation, after which the deciding official researched both the disorder and information about good sleep hygiene referenced by the appellant's physician.  0113 PFR File, Tab 6 at 96.  Upon doing so, the deciding official reportedly decided that the appellant had not provided sufficient evidence that he suffered from any medical condition. *Id*. at 97.  He seemed to indicate that this all occurred in the context of

---

[5] The administrative judge did explicitly consider an allegation that the deciding official improperly considered ex parte information in the form of a conversation between the deciding official and the appellant's former supervisor about the appellant's explanations for his alleged misconduct.  ID at 33-34.

considering the appellant's request for accommodation, but during the same time in which the appellant's proposed removal was pending. *Id*. at 96-97. The deciding official then provided confusing and seemingly conflicting answers when twice asked whether any of this was considered in concert with his penalty analysis for the proposed removal. *Id*. at 97-98.

Further confusing matters, the testimony to which the appellant has directed us does not explicitly indicate whether the deciding official was describing his actions related to the first removal, which the agency rescinded because of its own discovery of ex parte communications, or the second removal, which is currently before us. *Id*. at 96-98; *see* ID at 34. However, the context strongly suggests that the deciding official was discussing the first removal. 0113 PFR File, Tab 6 at 96-98. That is because the deciding official described doing this research after the appellant's response and before his removal, but the appellant has himself acknowledged that he only responded to the first removal. *Id*. at 10-13, 96-98.

So, the situation is such that the deciding official seems to have conducted some unexplained "research" about the appellant's claim of a sleep disorder before issuing his December 2016 decision to remove the appellant—a decision which explicitly discusses this sleep disorder to find that it did not excuse the appellant's misconduct. *E.g.*, 0113 IAF, Tab 4 at 10-11. However, the agency rescinded that removal and the deciding official did not remove the appellant the second time until 2 years later, in December 2018. 0113 IAF, Tab 3 at 11-16. Being the same official, it is certainly possible that he relied upon prior "research" from years earlier during the second removal action, but the appellant has identified no evidence to support that conclusion. In fact, the December 2018 decision letter contains no mention of any medical condition. *Id*. Accordingly, we find that the appellant has failed to prove that the deciding official relied on ex parte information in the form of "research" he conducted 2 years earlier when removing the appellant the second time.

*The appellant failed to prove that the agency committed a harmful error.*

The appellant also reasserts on review one claim of a harmful procedural error that he raised below. 0113 PFR File, Tab 6 at 23-26. To understand his argument, it is important to note the following sequence of events: First, the agency suspended the appellant in February 2016, and again in March 2016, for separate instances of leave-related misconduct.[6] 0113 IAF, Tab 3 at 71-75 (February 2016 suspension), 77-80 (March 2016 suspension). Second, the appellant engaged in more leave-related misconduct in August and September 2016, which formed the basis of the removal before us. 0156-I-2 AF, Tab 24 at 29. Third, the agency proposed the appellant's removal for this latest misconduct in October 2016, 0156 IAF, Tab 4 at 70-73, and effectuated that removal in December 2016, *id*. at 27-34, but eventually rescinded the action in April 2018, while the appellant was challenging that action before the Board, 0156-I-2 AF, Tab 24 at 11-12. Fourth, the agency issued its new proposal to remove the appellant—the one underlying this appeal—in May 2018. *Id*. at 29.

According to the appellant, the agency erred by considering the February and March 2016 suspensions as prior offenses for purposes of its May 2018 removal action because those suspensions were more than 2 years old by the time of the second proposal to remove him. 0113 PFR File, Tab 6 at 23-26. He argues that the agency's actions were contrary to a CBA provision or at least the agency's past practices. *Id*.

Under the harmful error doctrine, an agency's action is reversible only if an employee proves a procedural error that substantially prejudiced his rights by possibly affecting the agency's decision. *Dieter v. Department of Veterans Affairs*, 2022 MSPB 32, ¶ 20. Harmful error cannot be presumed; the employee must show that the error was likely to have caused the agency to reach a

---

[6] Although the appellant disputed the alleged conduct underlying these suspensions below, he has not done so on review. *See* 0113, Tab 18 at 4; ID at 36-37.

conclusion different from the one it would have reached in the absence or cure of the error. *Id*.; 5 C.F.R. § 1201.4(r).

As the administrative judge correctly recognized, the CBA does not altogether preclude the agency from relying on discipline that is more than 2 years old. ID at 37-38. It states that, "[i]n assessing penalties, consideration will be given to the length of time that has elapsed from the date of any previous offense. As a general guide, a two (2) year timeframe should be used in determining freshness." 0113 IAF, Tab 18 at 87. The plain language of that provision indicates that it is a general guide, not an inflexible rule.

Even so, the appellant suggests that the CBA provision has been applied as if it were a requirement, rather than a "general guide," so the agency should be bound by that past practice. 0113 PFR File, Tab 6 at 23-26. He recounts testimony indicating that the agency does not consider prior discipline that is more than 2 years old. *Id*. We have reviewed the referenced testimony, but we are unpersuaded. The appellant relies on a small portion of hearing testimony that provides little insight into how the agency has historically applied the CBA provision, particularly in a case like this, where the misconduct all occurred in a short period of time, but an adverse action was subject to a lengthy delay because one action was rescinded and replaced with another. *Id*. Notably, the witness upon whom the appellant relies indicated that he was not involved in the appellant's 2018 removal, and he suggested that he had not encountered a similar scenario, where fresh discipline becomes stale while pending. 0113 HT1 at 141-42, 188, 214 (testimony of the Labor and Employee Relations Specialist). Moreover, a more senior witness who *was* involved in the appellant's removal indicated that the CBA provision was not an inflexible rule. 0113 HT2 at 6, 39-45 (testimony of the Labor and Employee Relations Manager for the New England Region). Finally, the official who served as the proposing and deciding official for the 2016 and 2018 removal actions testified that he considered the 2018 removal to be a mere correction of the rescinded 2016 removal, so the

appellant's 2016 suspensions could still be relied upon as prior offenses. 0113 HT2 at 59, 80, 146-48 (testimony of the appellant's second-level supervisor).

It seems quite apparent that the CBA provision and the agency's table of penalties were intended to encourage progressive discipline for repeat offenses, while allowing an individual the chance to earn a clean slate if they work for an extended period without further missteps. 0113 IAF, Tab 3 at 59, Tab 18 at 87. Here, though, the length of time between the appellant's offenses was just months, even if the final removal action was significantly delayed. The appellant did not work for an extended period without further missteps; his removal was merely delayed for procedural reasons. For all these reasons, we agree with the administrative judge's conclusion that the appellant has not proven a harmful error.

Removal is a reasonable penalty.

The appellant's final argument about the second removal action is that the agency's penalty was not reasonable. 0113 PFR File, Tab 6 at 26-27. But this argument relies on the one above, regarding the CBA provision and past offenses. The appellant reiterates his assertion that the misconduct underlying his removal should be considered a first offense and, consequently, the Board should find his removal to be an unreasonable penalty. *Id*. We disagree.

When all of an agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 19. In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id*. The Board will modify or mitigate an agency-imposed penalty only when it finds that the agency

failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Id*.

In this case, the agency proved all the misconduct it alleged, and we discern no basis for disturbing its choice of penalty. For the reasons discussed above, we find that the agency properly considered the appellant's prior suspensions, despite the appellant's arguments to the contrary. The appellant has not shown that the agency failed to consider all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *See, e.g., Moxley v. Veterans Administration*, 36 M.S.P.R. 345, 346-49 (1998) (finding removal to be a reasonable penalty for 8 hours of AWOL when the employee had two prior suspensions for similar misconduct).

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:          _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.