**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

RICKY WAYNE BOGGS,
                    Appellant,

          v.

DEPARTMENT OF LABOR,
                    Agency.

DOCKET NUMBER
DC-0752-20-0886-I-1

DATE:  February 19, 2025

# THIS ORDER IS NONPRECEDENTIAL[1]

Diana R. Schroeher, Esquire, Beltsville, Maryland, for the appellant.

Monica Moukalif, Esquire, Atlanta, Georgia, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed the agency's action removing him.  The agency has filed a cross-petition for review arguing that the administrative judge erred in finding jurisdiction over the appeal.[2]  For the reasons discussed below, we GRANT the appellant's petition for review, DENY the agency's cross-petition for review, and REMAND the case

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The agency proposed removing the appellant, a GS-12 Mine Safety and Health Specialist with the Mine Safety and Health Administration (MSHA), Educational Field and Small Mine Services, for conduct unbecoming a Federal employee. Initial Appeal File (IAF), Tab 6 at 24-32. Under that charge, the agency listed three specifications alleging that the appellant held or facilitated training sessions regarding regulations issued by the agency and related matters for three different private companies without securing prior agency approval. *Id.* at 25-28. The agency alleged that the appellant's conduct violated the ethical standards of conduct set forth in 5 C.F.R. § 2635.101(b)(10) prohibiting Federal employees from engaging in outside employment or activities that conflict with their official duties. *Id.* The appellant replied to the proposal notice, and the deciding official sustained the agency's action, effective September 4, 2020. *Id.* at 13-18, 22-23. However, the appellant retired September 3, 2020, before his removal became effective. IAF, Tab 16 at 7.

The appellant filed an appeal in which he claimed that he had involuntarily retired and argued that the agency's removal action was taken in retaliation for his "disagreements with management in the past." IAF, Tab 1 at 3, 5. Regarding those disagreements, the appellant explained that he and four other agency employees in his same position had filed a union grievance in April or May of 2016 concerning the agency's posting of supervisory vacancies. IAF, Tab 31 at 25. According to the appellant, that matter was settled, but in

---

[2] At the time the agency filed its cross petition for review, the Board regulations allowed for such a pleading. 5 C.F.R. § 1201.114(a) (2021). Effective October 7, 2024, the Board revised its regulations to no longer provide for a cross petition for review. 89 Fed. Reg. 72,957, 72,959 (Sept. 9, 2024). Because the regulations allowed for a cross petition for review at the time it was filed, we have considered the arguments raised in that pleading.

August 2019 the agency failed to honor the settlement, and he and three of the original four coworkers raised the matter with the agency through the union. *Id.* at 25-26. The appellant also asserted that, following his receipt of a fully successful performance rating and his nonselection for a supervisory vacancy, in November 2019 he filed an equal employment opportunity (EEO) complaint asserting age discrimination and reprisal for prior protected activity.[3] *Id.* at 6, 19, 25.

In response to the agency's jurisdictional arguments during the proceedings below, the administrative judge found jurisdiction over the appeal because the appellant had retired after the agency issued its decision to remove him but before the effective date of his removal. IAF, Tabs 16, 24; *id.*, Tab 25 at 2-4. In the initial decision, the administrative judge affirmed the removal action, finding that the agency established all three specifications under the conduct unbecoming charge and thus proved the charge. IAF, Tab 34, Initial Decision (ID) at 1, 3-7. The administrative judge also found that the agency established a nexus between the sustained misconduct and the efficiency of the service and that the penalty of removal was reasonable. ID at 7-9. Concerning the appellant's argument that the agency had removed him in retaliation for protected union and EEO activity, the administrative judge found that, because the appellant had not identified retaliation as an affirmative defense in response to a January 15, 2021 Order Closing the Record, he had essentially waived that claim and the administrative judge would not adjudicate it. ID at 9-10; IAF, Tab 15 at 3.

In his petition for review, the appellant argues that the administrative judge failed to consider material facts in finding that the agency proved the charge, established nexus, and found that the penalty was reasonable. Petition for Review (PFR) File, Tab 1 at 6-9. The appellant also argues that the administrative judge erred by failing to consider his claim of retaliation for union and EEO activity.

---

[3] The appellant requested a hearing in his initial appeal but subsequently withdrew that request. IAF, Tab 1 at 2, Tab 15 at 2.

*Id.* at 9-15. The agency filed a response to the appellant's petition for review and a cross-petition for review arguing, among other things, that the administrative judge erred in finding jurisdiction over the appeal. PFR File, Tab 6 at 11-14. The appellant filed a response to the agency's cross-petition for review and a reply to the agency's response. PFR File, Tab 10.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge correctly found Board jurisdiction over the appellant's appeal, and the agency's cross-petition for review contending to the contrary is denied.</u>

As mentioned above, the agency argues in its cross-petition for review that the administrative judge erred in finding jurisdiction over this appeal. Because jurisdiction is a threshold issue to be resolved before addressing other aspects of an appeal, we begin our analysis there. *Evans v. Department of Veterans Affairs*, 119 M.S.P.R. 257, ¶ 5 (2013) (stating that the Board must first resolve jurisdiction before proceeding to the merits of an appeal); *see Schmittling v. Department of the Army*, 219 F.3d 1332, 1337 (Fed. Cir. 2000) (finding that before addressing the merits of an appeal, the Board must determine whether all of the jurisdictional requirements have been met).

The essence of the agency's jurisdictional argument is that because the appellant voluntarily retired after the decision to remove him had been made but the day before the effective date of his removal, an appealable removal did not occur. PFR File, Tab 6 at 11-12. The agency's argument is misplaced.

Title 5, United States Code, section 7701(j) provides that in determining whether a removal is appealable to the Board, an individual's status under any Federal retirement system may not be taken into account. The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has interpreted this provision to mean that once a decision to remove an employee has been issued, the employee retains the right to appeal the removal to the Board, even if he retires from the Federal service on or before the date the removal would have become effective.

*Mays v. Department of Transportation*, 27 F.3d 1577, 1579-81 (Fed. Cir. 1994). The Board, as it must, has followed the court's interpretation of the statute on numerous occasions.[4]  *E.g.*, *Blatt v. Department of the Army*, 121 M.S.P.R. 473, ¶ 3 n.2 (2014); *Norton v. Department of Veterans Affairs*, 112 M.S.P.R. 248, ¶ 2 (2009); *Richards v. Department of Veterans Affairs*, 74 M.S.P.R. 17, 19 (1997). The Board has held that such appeals should be analyzed as removal appeals, and we shall do so here.  *Norton*, 112 M.S.P.R. 248, ¶ 2.  In sum, we find Board jurisdiction over the appeal and deny the agency's cross-petition for review.

<u>The appellant has offered no basis to disturb the administrative judge's findings as it relates to the merits of the agency's charge.</u>

The administrative judge sustained the agency's charge of conduct unbecoming, finding that the appellant conducted or facilitated three training sessions with private companies for profit without the permission of the agency, and that these trainings gave the appearance of preferential treatment and violated ethical rules such as 5 C.F.R. § 2635.101(b)(10).[5]  ID at 3-7.  On review, the appellant does not deny conducting or facilitating these training courses but instead claims that such activities were condoned by the agency because other employees were allowed to conduct or facilitate trainings for profit in their spare time.  PFR File, Tab 1 at 6-7.  In support of his argument, the appellant relies on a screenshot of an employee's Instructor Monitoring History, which indicates that this identified employee conducted two trainings in 2012 and 2013.  *Id.*; IAF, Tab 33 at 22.  We are unpersuaded by this piece of evidence for several reasons.

---

[4] In *Jenkins v. Merit Systems Protection Board*, 911 F.3d 1370, 1371-74 (Fed. Cir. 2019), the Federal Circuit distinguished the holding in *Mays* from the situation in that case, in which the agency rescinded the removal decision several days before the effective date of the appellant's retirement.  The court agreed with the Board that, under those facts, the Board lacked jurisdiction over the appeal.  In its decision, the court did not question the application of *Mays* to facts like those present in this appeal.

[5] Title 5 C.F.R. § 2635.101(b)(10) provides that "[e]mployees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities."

First, nothing in this document indicates that the agency did not assign that employee to conduct the trainings, or that the trainings were not performed in the normal course of his duties. IAF, Tab 33 at 22. Next, the document does not prove that this employee entered into an agreement with a private company to conduct the trainings for compensation, and the appellant admits that he does not know if this employee was compensated for his time. *Id.* at 21-22. Finally, and perhaps most importantly, the agency approved the trainings, as the document includes the notation "approval status: approved" next to both of the training entries. *Id.* at 22. Thus, contrary to the appellant's assertions, there is no evidence that the agency condoned or approved of its employees conducting outside trainings for private companies for their own personal gain without agency permission or approval.

We similarly reject the appellant's argument that these training courses did not conflict with his official duties because training was not part of his regular duties.[6] PFR File, Tab 1 at 7. His performance plan specifically lists training as a critical element of his job. IAF, Tab 6 at 183, 186. Nevertheless, even if training was not a critical element of his performance plan, we would still find that these outside trainings conflicted with his official job duties. The appellant was teaching MSHA materials to private companies for material gain. PFR File, Tab 1 at 6-9; IAF, Tab 6 at 77-78, 100-01, 117-18, Tab 31 at 7-8, 24. It is a logical assumption that he was afforded these opportunities because he was a

---

[6] The appellant cites to the agency's close of record submission to support the contention that the agency conceded that training was not part of the appellant's regular duties. PFR File, Tab 1 at 7. The agency reiterated the language of the specifications in its submission, which states that the appellant did not receive approval or direction from his supervisor to hold the trainings, and the trainings were not provided in the regular course of duties. *Compare* IAF, Tab 26 at 10, *with* IAF, Tab 6 at 25, 27. The appellant has misinterpreted the agency's statement. The statement simply means that the identified training courses were not an agency assignment, i.e., not assigned in the regular course of duties.

MSHA employee—thus, his conduct most certainly conflicts with the core of his duties as a MSHA employee.

The evidence is clear that the appellant entered into agreements with private companies to conduct or facilitate training courses on agency regulations and materials, for his own personal gain, without the agency's permission or approval. IAF, Tab 6 at 77-78, 100-01, 117-18, Tab 31 at 7-8, 24. Accordingly, we agree with the administrative judge that the appellant's conduct violated 5 C.F.R. § 2635.101(b)(10), and thus, the charge was properly sustained. ID at 3.

<u>The appellant has offered no basis to disturb the administrative judge's findings that nexus was established or that the penalty of removal was reasonable.</u>

In the initial decision, the administrative judge found that there was "clear nexus" between the appellant's misconduct and the efficiency of the service because his conduct violated ethical rules and gave the impression of preferential treatment to certain private companies. ID at 7. Although the appellant disputes the finding of nexus on review, he fails to articulate a specific argument as to how his conduct did not impact the efficiency of the service. PFR File, Tab 1 at 9. Accordingly, because we agree with the administrative judge's findings that the appellant's conduct violated ethical rules and thus necessarily impacts the efficiency of the service, we discern no reason to disturb them.

As for the penalty of removal, the administrative judge found that the deciding official considered all relevant *Douglas* factors and concluded that removal was reasonable in light of the appellant's egregious conduct. ID at 8. We agree.

To the extent that the appellant argues that removal was inconsistent with the penalty imposed on other employees who engaged in the same or similar misconduct, the record does not support such an argument. PFR File, Tab 1 at 9. For the reasons explained above, the individual proffered by the appellant is not a valid comparator because there is no evidence that this employee engaged in any misconduct, let alone similar misconduct. *Singh v. U.S. Postal Service,*

2022 MSPB 15, ¶ 13 (explaining that for purposes of evaluating the consistency of the penalty, the universe of potential comparators will vary from case to case, but it should be limited to those employees whose misconduct and/or other circumstances closely resemble those of the appellant).

We also reject the appellant's argument that he lacked proper notice of the applicable rules and thus did not know his conduct was improper. PFR File, Tab 1 at 7-8. The appellant received ethics training. IAF, Tab 6 at 152, Tab 33 at 20. Furthermore, the agency provided a guidebook summarizing the applicable ethical rules, accessible to all of its employees. IAF, Tab 6 at 151-68. While this guidebook does not address every ethical quandary that may arise, the manual provides enough guidance for an employee to understand the core of the ethical rules, including the prohibition on outside employment or activities that conflict with official duties. *Id.* Further, the appellant facilitated another training course after being interviewed by the agency Office of Inspector General (OIG) and questioned on the two previous training courses he had already conducted. IAF, Tab 31 at 24-25. At that point, the appellant was clearly on notice that his actions could violate ethical rules.[7] *Id.* at 8, 24-25.

Therefore, we are unconvinced that the appellant did not know that his conduct violated ethical rules. This is bolstered by the fact that the appellant appears to have taken steps to conceal his activities, including having one company issue the payment check to his wife instead of him, "because [he] didn't want the appearance that [he] accepted it." IAF, Tab 6 at 54-56, 125. Thus, we conclude that the appellant knew that these outside trainings were improper and a violation of rules and/or regulations.

Accordingly, as the appellant has presented no persuasive arguments on review as it relates to the merits of the charge, nexus, or reasonableness of the

---

[7] While the appellant's son was listed as the competent person, i.e., the trainer, for the third training, per witness accounts, the appellant coached his son through the training and essentially conducted it himself. IAF, Tab 6 at 36-37, 53, 148.

penalty, and the record supports the administrative judge's findings, we affirm them.  ID at 3-9.

<u>Nevertheless, we remand this matter because the administrative judge erred in finding that the appellant waived his affirmative defense of retaliation</u>.

As noted above, the administrative judge declined to adjudicate the appellant's affirmative defense that the agency's removal action was taken in retaliation for protected union and EEO activity.  ID at 9-10.  He did so because he found that, while the appellant mentioned retaliation in his appeal, he did not assert an affirmative defense during a January 15, 2021 status conference and did not respond to the administrative judge's instruction in the summary of the status conference that, if he wished to raise an affirmative defense, he had to do so by January 22, 2021.  ID at 10; IAF, Tab 15 at 3.  The appellant argues on review that the administrative judge erred by declining to adjudicate his retaliation claims.  PFR File, Tab 1 at 9-15.

The Board has recently addressed the issue of whether a previously raised affirmative defense has been effectively waived by an appellant in *Thurman v. U.S. Postal Service*, 2022 MSPB 21.  After providing a detailed discussion of inconsistent Board precedent on the issue, *Thurman* set forth a non-exhaustive list of factors relevant to determining whether an appellant waived an affirmative defense.  The articulated factors are as follows:

(1) the thoroughness and clarity with which the appellant raised his affirmative defense;

(2) the degree to which the appellant continued to pursue his affirmative defense in the proceedings below after initially raising it;

(3) whether the appellant objected to a summary of the issues to be decided that failed to include the potential affirmative defense when he was specifically afforded an opportunity to object and the consequences of his failure were made clear;

(4) whether the appellant raised his affirmative defense or the administrative judge's processing of the affirmative defense claim in his petition for review;

(5) whether the appellant was represented during the course of his appeal before the administrative judge and on petition for review, and if he was not, the level of knowledge of Board proceedings possessed by the appellant; and

(6) the likelihood that the presumptive abandonment of the affirmative defense was the product of confusion, or misleading or incorrect information provided by the agency or the Board.

*Id.*, ¶ 18.

Applying those factors to this case, we find that the first two factors, which concern the clarity with which the appellant raised the affirmative defense and degree to which he continued to pursue it thereafter, both support a finding that the appellant did not abandon his affirmative defense. As the appellant correctly asserts in his petition for review, he raised his claim of retaliation "at each and every step of his [a]ppeal," and he clearly articulated the claim. PFR File, Tab 1 at 11-12; *see, e.g.*, IAF, Tab 1 at 5, Tab 22 at 40, Tab 31 at 15-21, Tab 33 at 14-15. Concerning the third factor, i.e., whether the appellant objected to the exclusion of his retaliation claim from the administrative judge's status conference summary, IAF, Tab 15 at 3, he did not do so. However, he was pro se at the time of the status conference, and he argues on review that he does not recall the administrative judge explaining that his retaliation claim was an affirmative defense and did not understand that the administrative judge was asking him whether he wanted to withdraw the retaliation claim. PFR File, Tab 1 at 11. Moreover, we observe that despite the appellant consistently arguing after the status conference that the agency's action was taken in retaliation for his protected activity, the administrative judge did not mention the issue again until finding in the initial decision that he would not consider the claim. IAF, Tab 31 at 15-21, Tab 33 at 14-15; ID at 9-10. So, while the appellant's failure to object to the status conference summary might usually support a finding that the appellant abandoned the affirmative defense, we find that the appellant's failure to understand makes this factor closer to neutral.

Concerning the fourth factor, i.e., whether the appellant raised the issue in his petition for review, he did so. PFR File, Tab 1 at 9-15. Regarding the fifth factor, whether the appellant was represented during the course of his appeal, he was not represented at the time of the January 15, 2021 status conference or in the week following the status conference during which the administrative judge afforded the appellant an opportunity to assert an affirmative defense. IAF, Tab 15 at 3. Thus, these factors also support a finding that the appellant did not abandon his affirmative defense.

Lastly, the sixth factor, i.e., the likelihood that the abandonment of the affirmative defense was the product of confusion, or of misleading or incorrect information, also supports a finding that the appellant did not abandon his affirmative defense. As noted above, the appellant states on review that he did not understand that retaliation was an affirmative defense and "never understood that he was being asked [by the administrative judge] whether he wanted to withdraw his claim of retaliation." PFR File, Tab 1 at 11. We also observe that the administrative judge's status conference summary on this point could be confusing to a pro se litigant. IAF, Tab 15 at 3. In the order, the administrative judge acknowledged that the appellant claimed that he was the victim of retaliation but also stated that the appellant did not raise any affirmative defenses during the status conference. *Id.* The order then asserted that, if the appellant wanted to assert an affirmative defense, he needed to do so, and then set forth the elements the appellant must establish to prove a prima facie case of retaliation. *Id.* At no point does it appear that the administrative judge explained that retaliation is an affirmative defense, and from the language of the order, it is understandable how the appellant could have believed that his retaliation claim would be addressed. Moreover, as noted above, despite the appellant arguing retaliation after the deadline set to raise affirmative defenses in the January 15, 2021 order, it does not appear that the administrative judge ever sought to clarify for the appellant that his claim that he was removed in retaliation for his prior

challenges of agency actions was an affirmative defense. IAF, Tab 31 at 15-21, Tab 33 at 14-15.

Thus, every factor save for the third, i.e., whether the appellant objected to the summary of the status conference in which the administrative judge set forth the issues to be decided, supports a finding that the appellant did not waive his affirmative defense of retaliation, and that factor is close to neutral. Accordingly, we conclude that the administrative judge erred in not considering the appellant's affirmative defense of retaliation. *Thurman*, 2022 MSPB 21, ¶ 18.

<u>On remand, the administrative judge should develop the record and issue a new initial decision on all the issues, including the appellant's affirmative defense of retaliation.</u>

On remand, the administrative judge is ordered to reinstate the appellant's affirmative defenses of retaliation for protected union and EEO activity. After accepting evidence and argument on the affirmative defenses, the administrative judge must issue an initial decision that identifies all material issues of fact and law, summarizes the evidence, resolves issues of credibility, and includes the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests). The administrative judge may adopt his findings on the merits of the charge, nexus, and the reasonableness of the penalty, if appropriate. However, regardless of whether the appellant proves his affirmative defenses, if any argument or evidence on remand affects the administrative judge's analysis of the merits, nexus, or penalty, he should address such argument or evidence in the remand initial decision. *Id.*

**ORDER**

For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

_Gina K. Grippando_

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.